**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William B. EDMONDSON, Sr., Defendant-Appellant.**

**No. 26628.**

United States Court of Appeals Fifth Circuit.

April 25, 1969.

Rehearing Denied May 30, 1969.

Morel Montgomery (Court-appointed), Fred Blanton, Jr., Birmingham, Ala. (Associate Counsel), for defendant-appellant.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, J. Richmond Pearson, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge:

Edmondson appeals from his conviction for perjury [1] and raises questions of sufficiency of the indictment, sufficiency of the evidence, and validity of the court's charge to the jury. We affirm.

Edmondson was president of American Southern Publishing Company, a corporation headquartered in Northport, Alabama. In an apparent effort to bolster the credit rating of his company, Edmondson allegedly had stationery printed bearing the letterhead of Georgia State Department of Education, Jack P. Nix, Superintendent of Schools, and fabricated two letters under that letterhead about which the alleged perjury centers. Both letters were addressed to Edmondson as President of American Southern Publishing Company. The first, dated August 10, 1966 (Exhibit No. 1), appears to be signed by Jack P. Nix, "State Superintendent of Education." It purports to confirm a verbal agreement "between

I. 18 U.S.C. § 1621.

you and the Georgia State Board of Education Professional Textbook Adoption Committee" for the purchase of 70,000 copies of a textbook, "This is Your Georgia," to be published by the Edmondson firm. The second letter, dated August 16, 1966 (Exhibit No. 2), six days after the first, purports to be signed by Hal W. Clements, "Director Division of Instructional Materials and Library Service," "as an official notification of your company's textbooks which were adopted by the State Board of Education * * *." The list attached to that letter showed " 'This is Your Georgia' by Mrs. Bernice McCullar" at a net wholesale price f. o. b. Atlanta of $4.80. Facsimile copies of the two letters were included in the indictment as Exhibits 1 and 2.

## I.

The indictment charged that Edmondson having been duly sworn testified in the first meeting of creditors concerning said exhibits as follows:

"MR. FULFORD [Attorney for Receiver]: I ask you to Cross-Examine [sic] this letter, which is addressed to you, August 10, in the letterhead Georgia State Board of Education, are you familiar with that, please, sir.

"A. Yes, Sir I am.

"Q. Did you receive that letter in the mail please, sir?

"A. Yes, I did.

"Q. I will ask you also, to examine Receiver's Exhibit No. 2 and tell us if you received that letter also, in the mail?

"A. Yes, sir, I did.

\* \* \* \* \* \*

"Q. All right, sir, now Mr. Edmondson, I want to ask you please sir, if you don't know as a fact, that you had stationery printed in the Plant down there by Claude Dean, to print up a letterhead for the Georgia State Department of Education and you had that written in your office from a type-writer yourself, and that there was never such a letter in existence, from the State of Georgia, or this one either Receiver's Exhibit No. 2?

"A. I did not.

\* \* \* \* \* \*

"Q. You tell us that you never instructed anyone, you never yourself signed that letter or instructed anyone to sign it. I want to be sure that you understand.

"A. I understand, and I answered that question.

"Q. Do you say that you had nothing to do with the fabrication of Receiver's Exhibit 1, and Receiver's Exhibit 2?

"A. Right.

\* \* \* \* \* \*

"Q. A series of questions were put to you by Mr. Fulford, and I will try my best to avoid duplicating them, or creating any inference [sic], maybe our motives may be different.

Exhibit No. 1, I want you to hold it again. Was that letter prepared by you or by anyone in your presence at your direction, or whether in you [sic], with your direction, with your knowledge?

"A. No.

\* \* \* \* \* \*

"Said defendant, then and there well knew that the foregoing answers were false and contrary to his oath to testify truthfully in said proceedings."

■■■ Edmondson moved to quash and dismiss the indictment because it did not charge that any of his answers were material to the matter under inquiry or investigation, and the court overruled that motion. For any of Edmondson's answers to constitute perjury, it is, of course, essential that the answer be material to the inquiry. That much appears from the very definition of the

crime,[2] and is inherent in the federal concept of perjury. As said by the elder Justice Harlan speaking for the Court in Markham v. United States, 1895, 160 U.S. 319, 325, 16 S.Ct. 288, 40 L.Ed. 441:

> "In 2 Chitty's Criminal Law, 307, the author says: 'It is undoubtedly necessary that it should appear on the face of the indictment that the false allegations were material to the matter in issue. But it is not requisite to set forth all the circumstances which render them material; the simple averment that they were so, will suffice.' In King v. Dowlin, above cited [5 T.R. 311], Lord Kenyon said that it had always been adjudged to be sufficient in an indictment for perjury, to allege generally that the particular question became a material question. So, in Commonwealth v. Pollard, 12 Met. 225, 229, which was a prosecution for perjury, it was said that it must be alleged in the indictment that the matter sworn to was material, *or* the facts set forth as falsely and corruptly sworn to should be sufficient in themselves to show such materiality." [3]

[3] In the present case the indictment did not expressly allege that the matter sworn to was material. So the question is whether "the facts set forth as falsely and corruptly sworn to should be sufficient in themselves to show such materiality." [4]

Edmondson's testimony was taken at the first meeting of creditors in the bankruptcy proceeding in the matter of American Southern Publishing Company on November 14, 1966. As of that date the proceeding was a voluntary petition under Chapter 11 of the Bankruptcy Act.[5] One of the purposes of the first meeting of creditors was to determine facts relevant to "the purposes of an arrangement providing for an extension of time for payment of debts in full." 11 U.S.C. § 707. The existence of a verbal agreement confirmed by letter for the production of 70,000 books at a fixed price was material to that inquiry, and the district court properly so held as a matter of law.

## II.

Edmondson moved for a judgment of acquittal when the Government rested. His motion was overruled. He offered no other evidence. It is not disputed that Edmondson's testimony as alleged in the indictment was given under oath. The district court properly held that it was material. The other two essential elements of proof of perjury are: (1) that Edmondson's statements or some of them[6] were in fact false; and (2)

2. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes *any material matter* which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States." (Emphasis added.) 18 U.S.C. § 1621.

3. In federal courts the issue of materiality of the alleged perjury is for the court and not the jury. Sinclair v. United States, 1929, 279 U.S. 263, 298, 299, 49 S.Ct. 268, 73 L.Ed. 692; Black-

mon v. United States, 5 Cir. 1940, 108 F.2d 572, 574; Harrell v. United States, 5 Cir. 1955, 220 F.2d 516, 518; Beckanstin v. United States, 5 Cir. 1956, 232 F.2d 1, 3; Brooks v. United States, 5 Cir. 1958, 253 F.2d 362, 364.

4. "The materiality of the false statements is sufficiently charged, if the facts alleged show such statements were material." La Salle v. United States, 10 Cir. 1946, 155 F.2d 452, 454. *Accord*: Travis v. United States, 10 Cir. 1941, 123 F.2d 268, 270; Williams v. United States, 5 Cir. 1957, 239 F.2d 748, 749.

5. 11 U.S.C. §§ 701–799.

6. All of the several particulars in which the defendant swore falsely may be embraced in one count, and proof of the falsity of any one will sustain the count. Arena v. United States, 9 Cir. 1955, 226 F.2d 227, 236; Stassi v. United States, 5 Cir. 1968, 401 F.2d 259, 262.

that Edmondson when he made the statements did not believe them to be true.[7]

The objective falsity of the statements made must be proved in conformity with the "two witness rule" peculiar to perjury cases. As Circuit Judge Washington has said for the D. C. Circuit:

"This rule is misnamed. It does not require the testimony of two witnesses. Properly stated it is that 'the uncorroborated oath of one witness is not enough to establish, for purposes of conviction of perjury, the falsity of sworn testimony.' Maragon v. United States, 1950, 87 U.S.App.D.C. 349, 350, 187 F.2d 79, 80, certiorari denied, 1951, 341 U.S. 932, 71 S.Ct. 804, 95 L.Ed. 1361. See Hammer v. United States, 1926, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Weiler v. United States, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495."

Young v. United States, 1954, 94 U.S.App.D.C. 54, 212 F.2d 236, 241.

Dr. Nix, the Georgia State Superintendent of Schools, whose purported signature was affixed to the letter dated August 10, 1966, Exhibit 1, testified, without dispute, that it was not his signature and that he did not authorize any other person to affix his signature, nor authorize or direct the preparation of the letter. Harold W. Clements, formerly with the Georgia Department of Education, whose signature purports to be affixed to the letter dated August 16, 1966, Exhibit 2, gave like unequivocal testimony as to that letter. Clark Dean, a former employee of The American Southern Publishing Company, testified that at Edmondson's direction he prepared the letterheads on which the two letters were typed.[8] There was an abundance of other corroborative evidence. The record fairly shrieks of Edmondson's guilt of perjury.

### III.

Edmondson's extremely competent and experienced counsel was asked outside the presence and hearing of the jury whether he had any objection to the court's oral charge, and he responded, "No exceptions, your Honor." The able district judge gave general instructions on types of evidence, followed by a specific instruction on the essential evidentiary requirements to authorize a conviction for perjury.[9] The portions of the charge regarding the weight given circumstantial evidence and the peculiar requirements as to evidence in a perjury case were widely separated and could not have confused the jury.

We find no error in the record, and the judgment is

Affirmed.

7. La Placa v. United States, 1 Cir. 1965, 354 F.2d 56, 58.

8. "Q. Did he give you any instruction about what you should do with the materials and who you should tell about this?
"A. Yes, sir. He told me, he said, now, you just take this back and you do the job yourself; said, if you would, I would like to have it this afternoon before you leave, and I think this was in the morning-time. I knew I had plenty of time to do it, and he wanted two or three hundred copies of it; so, I went back and I made the negative myself and stripped it up myself; I made the plate myself and run it myself." (Transcript p. 88.)

9. "The law requires, in a case such as this, that the falsity of the testimony in question be proved by the sworn testimony of at least one witness, and that the evidence of falsity given by such witness be corroborated or supported by other testimony or by documentary evidence or by some other evidence." (Transcript pp. 182–183.)