UNITED STATES of America,
Appellee,

v.

Joseph BONACORSA,
Defendant-Appellant.

No. 377, Docket 75–1284.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1975.

Decided Jan. 9, 1976.

J. M. Rothblatt, New York City (Rothblatt, Rothblatt, Seijas & Peskin, New York City, of counsel), for defendant-appellant.

Shirley Baccus-Lobel, Washington, D. C. (David G. Trager, U. S. Atty., E. D. N. Y., of counsel), for appellee.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In 1973, a special grand jury was investigating harness racing in the New York metropolitan area. Several of those who came under investigation were indicted and convicted of sports bribery. *See United States v. Gerry*, 515 F.2d 130 (2d Cir. 1975). Others were indicted and convicted for lying to the grand jury. *See United States v. Turcotte*, 515 F.2d 145 (2d Cir. 1975). Appellant falls within the latter group. He was convicted of perjury (18 U.S.C. § 1623)[1] for falsely testifying about the ownership of a horse and his relationship with Forrest Gerry, one of the defendants in the above cited cases. He was also convicted on a count of obstructing justice (18 U.S.C. § 1503)[2] by attempting to influence another grand jury witness to testify falsely in support of his own perjurious testimony.

The innocent cause of appellant's troubles was a standardbred named Joli Timmy who, until February 1973, was owned by Leonard and Richard Schweitzer. Steven Rubin, the Schweitzers' trainer, convinced them that the horse should be sold and thereafter arranged a deal with Gerry, whose owner's license had been revoked. Although Gerry at first represented that he was acting on behalf of an interest in New Zealand, the jury was entitled to find that he actually made the purchase for himself. After Gerry paid Rubin in cash, he directed him to deliver the horse and blank registration papers to appellant. Bonacorsa thereafter trained Joli Timmy and raced it in his wife's name.

On June 11, 1973, appellant testified before the grand jury that he owned the horses which he had recently purchased and that he had no secret partners. Sometime in September, according to the government's proof, appellant secured from Rubin a handwritten bill of sale for Joli Timmy backdated to February 16, 1973, and indicating the purchaser to be Mrs. Bonacorsa. Bonacorsa told Rubin at that time and again several weeks later, that if Rubin were to be questioned he should identify Bonacorsa as the purchaser.

On September 14, 1973, appellant was recalled before the grand jury and gave the first testimony alleged to be false in count 1 of the superseding indictment.[3]

---

1. 18 U.S.C. § 1623(a) provides in part:

    Whoever under oath in any proceeding before . . . any . . . grand jury of the United States knowingly makes any false material declaration . . . shall be fined [and/or imprisoned].

2. 18 U.S.C. § 1503 provides in part:

    Whoever corruptly . . . endeavors to influence . . . any witness, in any court of the United States . . . or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined [and/or imprisoned].

3. Appellant's September 14, 1973, testimony as set forth in count 1 of the indictment reads as follows:

    Q. Are any horses which you now own or train or have driven really owned by Forrest Gerry?

    A. No, sir.

    \* \* \* \* \* \*

On December 19, 1973, Bonacorsa was recalled once more and, through a deposition taken on December 17, 1973, and read to the grand jury,[4] again denied having had any business dealings with Gerry. This testimony made up the remainder of count 1.[5]

> Q. Did you ever purchase race horses for Forrest Gerry under your name or your wife's name?
> A. No.
> Q. Or anyone else's name.
> A. No.
> Q. Do you know if Forrest Gerry ever purchased horses under anyone else's ownership?
> A. No, I don't.

4. Because a grand jury quorum was not present on December 17, 1973, appellant's testimony was taken by deposition in the presence of his attorney. This deposition was thereafter incorporated by reference into appellant's December 19, 1973, testimony.

5. Appellant's December 19, 1973, testimony as contained in count 1 of the indictment reads as follows:

> Q. Now, Monday you were here and there weren't enough Grand Jurors and because there weren't enough Grand Jurors we had a deposition taken, is that correct?
> A. Yes.
> Q. And we have the minutes which you have in your hand, is that correct?
> A. Yes.
> Mr. Meyerson: Let's mark this for identification as a Grand Jury Exhibit.
> (Whereupon, the aforementioned transcript was marked Grand Jury Exhibit 2, as of this date, by the reporter.)
> Q. Have you read this deposition?
> A. Yes.
> Q. Which is Grand Jury Exhibit 2?
> A. Yes.
> Q. Is everything you said in there the truth and accurate?
> A. Yes, sir.
> Q. And is it all accurate as to what you did say at that time?
> A. I believe it is, Mr. Meyerson.
> Q. And you stick to those statements today, is that correct?
> A. Yes.
> Q. And if you were asked the same questions today, you would answer in the same way?
> A. Yes, Mr. Meyerson.
> Q. You adopt those statements as yours for the purposes of this proceeding?
> A. Yes, Mr. Meyerson.
> Grand Jury Exhibit # 2 states in pertinent part, as follows:

Since the government's case rests in substance upon its claim that Gerry was the true owner of Joli Timmy, appellant's opening salvo is aimed at the sufficiency of the government's proof on this point. Appellant offered testimony purporting to show that the money used

> Q. What about the fifth horse?
> A. I didn't want to hold any money. The fifth horse I bought outright and I believe I remember the name of the people was Ruben. Steve Ruben.
> Q. And anybody else?
> A. I think he had a partner but I dealt with Steve because he was a trainer and so on and so forth and I got a bill of sale from him for the amount that I purchased the horse for and also we paid the City sales tax to the tax people for the amount of the horse.
> Q. You dealt with him directly?
> A. Yes.
> Q. How did you pay him, with a check or cash?
> A. No cash.
> Q. Do you remember approximately when this was?
> A. It was in February sometime, Hal. I don't know the exact date right offhand.
> Q. How many times did you deal with him, just that one time?
> A. With who is this?
> Q. Mr. Ruben.
> A. Just the one time, yes.
> Q. And this is for the horse Joli Timmy? Is that correct?
> A. Right.
>
> * * * * * *
>
> Q. I would like to go over now your testimony concerning Forrest Gerry.
> A. Okay.
>
> * * * * * *
>
> Q. And did you ever have any business deals with him at all?
> A. No. No.
> Q. No business dealings with him?
> A. No. Not that I can remember of any type. The only business dealing I ever had with Forrest Gerry was when I first met him, many years ago. It must have been fifteen years or better. A young boy come to the track was looking for a goat and I sold him a goat for $10.
>
> * * * * * *
>
> Q. You never bought or sold horses from him?
> A. No, I didn't.
> Q. And he was never your agent in buying or selling any horses?
> A. No.

to purchase Joli Timmy was borrowed by him from other sources, and he contends that, on all the evidence, his motion for a judgment of acquittal should have been granted. However, this determination was for the jury; and, viewed in the light most favorable to the government, *United States v. Gerry, supra*, 515 F.2d at 134, the evidence was sufficient for the jury to conclude that Gerry paid for the horse and that it belonged to him.

■ Appellant next contends that several of the questions asked of him before the grand jury were sufficiently ambiguous to support more than one reasonable interpretation, under one of which the answers given would be true. Appellant's counsel submits, for example, that appellant's answer to the question "And anybody else?" on his December 19 grand jury appearance could be construed to be true, because appellant did receive the horse and a bill of sale from Steve. This, counsel says, might be what appellant was referring to by use of the phrase "dealt with". This interpretation promptly loses the facial plausibility given it by counsel if the answer is kept in the proper sequence of testimony where it belongs. In the immediately preceding answer, appellant stated that he "bought" the fifth horse outright and he believed the "name of the people was Rubin". The question "And anybody else?" could not reasonably be construed to refer to anyone but the person from whom appellant had bought the horse. In any event, it was for the jury to decide whether appellant gave, or could have given, any other meaning to the question. *Seymour v. United States*, 77 F.2d 577, 584 (8th Cir. 1935).

■ A defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole. *Meyers v. United States*, 84 U.S.App.D.C. 101, 171

F.2d 800, 806 (1948), *cert. denied*, 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076 (1949). If, in the natural meaning in the context in which words were used they were materially untrue, perjury was established. *United States v. Jones*, 374 F.2d 414, 420 (2d Cir.), *vacated on other grnds.*, 392 U.S. 299, 88 S.Ct. 40, 19 L.Ed.2d 95 (1968). It is clear that the grand jury was attempting to ascertain whether appellant was fronting for Gerry in the purchase and alleged ownership of Joli Timmy. When viewed with anything but the partisan eye of an advocate, the questions, as they followed one upon the other, were pointed toward the development of this information. Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer was for the jury. *United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir. 1970).

Even if ambiguity in several of the questions be assumed,[6] this does not mean that the conviction on the perjury count must be reversed. It is customary, and ordinarily not improper, to include more than one allegedly false statement in a single count. Fed.R.Crim.P. 7(c); *United States v. Mascuch*, 111 F.2d 602 (2d Cir.), *cert. denied*, 311 U.S. 650, 61 S.Ct. 14, 85 L.Ed. 416 (1940); *United States v. Edmondson*, 410 F.2d 670, 673 n. 6 (5th Cir.), *cert. denied*, 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430 (1969); *Arena v. United States*, 226 F.2d 227, 236 (9th Cir. 1955), *cert. denied*, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956). Also included on occasion is enough of the testimony surrounding the allegedly false statements to place them in coherent context. *Stassi v. United States*, 401 F.2d 259, 262 (5th Cir.), *vacated on other grnds. sub nom. Giordano v. United States*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1968).

■ It is therefore unnecessary that every question and answer contained in a single count be sufficient to support

---

6. Appellant contends that the four questions which follow "And anybody else?" are either ambiguous or unfair. This argument is not supported by a dispassionate reading of the testimony.

the charge of perjury. *United States v. Pollak,* 474 F.2d 828, 831 (2d Cir. 1973). Where there are several specifications of falsity in a single count, proof of any of the specifications is sufficient to support a verdict of guilty.[7] *United States v. Mascuch, supra; Vitello v. United States,* 425 F.2d 416, 418 (9th Cir.), *cert. denied,* 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); *Arena v. United States, supra; United States v. Edmondson, supra.* Moreover, a motion directed against the entire count, as in the instant case, is not the equivalent of a motion to withdraw from the jury any of the specific assignments of perjury contained in such count. *United States v. Mascuch, supra,* 111 F.2d at 603; *United States v. Goldstein,* 168 F.2d 666, 671 (2d Cir. 1948). We have recently affirmed the validity of the so-called Mascuch-Goldstein rule in *United States v. Natelli,* 527 F.2d 311 (2d Cir. July 28, 1975); *rev'd in part on rehearing* (1975), p. 327; *original opinion reinstated in all respects on second rehearing* (1975), p. 328, and we think it properly applicable in the instant case. Indeed, adherence to this rule is virtually mandated if the use of multiple, single-question counts in perjury indictments is to be avoided. Because of appellant's failure to move for the withdrawal of the allegedly ambiguous questions and answers as possible assignments of perjury or in some equivalent manner to focus the attention of the trial court on their asserted infirmities, the error allegedly resulting from their submission has not been preserved for review by this Court. *United States v. Natelli, supra.*

■ Counts 2 and 3 of the indictment both charge obstruction of justice. Appellant, who was acquitted on count 2 and convicted on count 3, now asserts a variance between pleading and proof on the latter count, which, he says, requires reversal of his conviction on this count. Count 2 alleges that appellant corruptly endeavored to influence Steven Rubin in February 1973, and count 3 alleges in identical language that similar improper conduct took place in September. Apparently, these counts were broken down in this manner because of Rubin's grand jury testimony that appellant secured the phony bill of sale for Joli Timmy in February. Since Rubin's testimony at trial was that the transfer of the bill of sale and appellant's several attempts to influence his testimony all took place in September, the jury quite properly acquitted on count 2. However, appellant's conviction under count 3 was not invalidated by proof that more wrongdoing than was originally thought occurred in September.

Appellant's only other claim of error meriting comment is that he was recalled before the grand jury after the decision had been made to seek an indictment against him and that this was done without fully advising him of his constitutional rights. It is undisputed that on December 13, 1973, six days prior to appellant's last grand jury appearance, government counsel wrote to the Department of Justice in Washington requesting authorization to seek an indictment against appellant, and the original indictment was handed up on December 19, after appellant had completed his testimony.

This sequence of events prompted the District Court to hold an evidentiary hearing following appellant's posttrial motions, and the following facts were found or stipulated:

(a) On September 14, 1973, a group of subpoenaed witnesses, which included appellant, was told by government counsel that they were potential targets of the grand jury investigation;

(b) At the same time, government counsel gave *Miranda* warnings to the witnesses;

(c) Appellant was represented by counsel at the time of his appearances before the grand jury, and counsel was physically present

---

7. This was the specific charge of the District Court to which no exception was taken.

when appellant's deposition was taken on December 17, 1973;

(d) Appellant was advised in the presence of his counsel on December 17, 1973, of his right to be represented by an attorney and to remain silent.

 We have held on numerous occasions that the government is not precluded from summoning as a grand jury witness one who has become a target of inquiry or a prospective defendant. *See e. g. United States v. Winter,* 348 F.2d 204, 207 (2d Cir.), *cert. denied,* 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); *United States v. Sweig,* 441 F.2d 114, 121 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *United States v. Corallo,* 413 F.2d 1306, 1328 (2d Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969). The District Court, after a comprehensive review of the facts, found that appellant was advised of both his status as a potential defendant and his rights resulting therefrom. This clearly distinguishes this case from *United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974), *cert. granted,* 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669 (1975) (argued 11/5/75), relied upon by appellant, and places it more in line with our own decision in *United States v. Corallo, supra,* where we found similar warnings to be "completely adequate." *Id.* at 1329. Moreover, appellant's attorney was at his side when his crucial testimony was taken by deposition on December 17, 1963, which was not the situation in either *Mandujano* or *Corallo.* Under all these circumstances, we see no basis for excluding appellant's December 19 testimony or reversing the conviction for perjury based thereon.

 We have fully reviewed and reject all of appellant's other assertions of prejudicial error. There is no merit in his claims based on the trial court's evidentiary rulings, *Post v. United States,* 132 U.S.App.D.C. 189, 407 F.2d 319, 324 (1968), *cert. denied,* 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969), and its participation in the examination of witnesses, *United States v. McCarthy,* 473 F.2d 300, 308 (2d Cir. 1972), and nothing of substance in appellant's complaints concerning allegedly improper comments and questions by the prosecution. *United States v. Brown,* 456 F.2d 293, 295 (2d Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972). No prejudice resulted from the fact that the jury was at first given the original rather than the superseding indictment. Everything in the former was incorporated into the latter, and the matter was properly and adequately handled by the court's instructions to the jury. *Cf. United States v. Warner,* 428 F.2d 730, 736–737 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970).

We believe that appellant received a fair trial and that the evidence was sufficient to support his conviction. We affirm.