UNITED STATES of America, Appellee,

v.

Rok GJURASHAJ and Gjon Dushaj, Defendants-Appellants.

Nos. 675, 676, Dockets 82–1307, 82–1308.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1983.

Decided April 18, 1983.

Michael E. Norton, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Gerard E. Lynch, Asst. U.S. Atty., New York City, on the brief), for appellee.

Phylis Skloot Bamberger, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant· Dushaj.

Howard L. Jacobs, New York City, filed a brief for defendant-appellant Gjurashaj.

Before KEARSE, WINTER, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Gjon Dushaj and Rok Gjurashaj appeal from judgments entered in the United States District Court for the Southern District of New York after a jury trial before Charles L. Brieant, Jr., *Judge,* convicting them on one count of engaging in the business of unlicensed dealing in firearms and the interstate transportation of firearms during the course of such business, in violation of 18 U.S.C. § 922(a)(1) (1976) (count 1); one count of conspiracy to deal in firearms without a license and to transport firearms interstate, in violation of 18 U.S.C. § 371 (1976) (count 2); and twelve counts of unlicensed interstate transfer of firearms, in violation of 18 U.S.C. § 922(a)(5) (1976) (counts 18–20 and 23–31). Each defendant was sentenced, by Charles E. Stewart, *Judge,* to a term of five years' imprisonment on each of these fourteen counts, to be served concurrently. On appeal, defendants contend that their convictions on count 31 should be reversed for failure of proof, and that their convictions on all other counts should be reversed because the government's emphasis on count 31 influenced the jury's consideration of the other counts. We reverse the convictions on count 31 and affirm the judgments in all other respects.

## BACKGROUND

Since there is no general challenge to the sufficiency of the evidence, a brief summary of the proof at trial will suffice. The evidence, viewed in the light most favorable

to the government, showed that during 1979 and 1980, Dushaj and Gjurashaj, who are related, attended a number of gun shows in California at which they purchased more than 200 guns. During this period, Gjon Berisha, who was a relative of Dushaj and Gjurashaj and lived in the Bronx, New York, was engaged in selling in New York, for the profit of himself, Dushaj, and Gjurashaj, guns purchased by the defendants in California. None of the three had ever held or applied for a federal firearms license entitling him to deal in or transport firearms.

Berisha was arrested on March 26, 1980, after selling three guns at his Bronx apartment, one to an undercover agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") and two to a confidential informant wearing a hidden recording device. A search of Berisha's apartment later that day by ATF Special Agent Larry Amaker pursuant to a search warrant yielded ten additional guns. Dushaj and Gjurashaj were arrested in February 1982 and indicted shortly thereafter.[1]

Each of the counts of the indictment numbered 18–20 and 23–31 charged that Dushaj and Gjurashaj, residents of California, had unlawfully transported or transferred a particular gun to Berisha, knowing him to reside in New York,[2] in violation of 18 U.S.C. § 922(a)(5).[3] As to each gun the government introduced proof of purchase in the form of the testimony of the seller of the gun, together with a receipt given by the seller, showing the gun's serial number and indicating either Dushaj or Gjurashaj as purchaser. The guns themselves, each given a government exhibit ("GX") number to correspond with the count that charged its unlawful transfer, were introduced.

The guns introduced as GX 18 and 19 were identified by Amaker as those purchased from Berisha at his home by the confidential informant. The gun introduced as GX 20 was identified by ATF Special Agent Ken Pribil as the gun he had purchased, operating undercover, from Berisha at the latter's home. The eight guns introduced as GX 23–GX 30 were identified by Amaker as guns seized from Berisha's apartment pursuant to the search warrant. The record does not indicate that GX 31 was ever identified as having been found in New York.

In addition to the detailed evidence as to particular guns, there was evidence that Berisha, prior to his arrest, had accompanied Dushaj and Gjurashaj to gun shows in California at which the defendants had purchased guns. There was evidence of numerous telephone calls between Berisha's apartment and the telephones of Dushaj and Gjurashaj during the period when the defendants were buying guns in California. And there was testimony by Amaker and another ATF agent that, during an interview with Dushaj following his arrest, Dushaj admitted having purchased guns in California and stated that he had taken some of these to New York, that he had sent some to New York by bus, and that Berisha had sometimes come from New York to California to pick up the guns.

At the close of the government's case—the defendants did not present any evidence—Dushaj and Gjurashaj moved pursuant to Fed.R.Crim.P. 29(a) for judgments of acquittal on the ground that the government had failed to prove interstate transfer of the guns by the defendants. The motions were denied, and Dushaj and Gjurashaj were convicted on all counts submitted

---

**1.** Berisha was indicted with Dushaj and Gjurashaj but was not tried with them.

**2.** Counts 21 and 22 also focused on particular guns, but, on the government's motion, those counts were dismissed for lack of proof that the guns had been found in New York.

**3.** Section 922(a)(5) provides, in pertinent part, as follows:

(a) It shall be unlawful—

. . . .

(5) for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe resides in any State other than that in which the transferor resides . . . .

to the jury, *i.e.,* counts 1, 2, 18–20, and 23–31.

## DISCUSSION

Dushaj and Gjurashaj contend that their convictions on count 31 must be reversed, and count 31 dismissed, since there was no proof of their transfer of GX 31 to a person believed to reside outside of California, an essential element of the crime charged under § 922(a)(5). In addition, they contend that their convictions on all other counts should be reversed, and a new trial ordered, on grounds of prejudicial spillover from the government's summation emphasis on count 31. We agree that the defendants' convictions on count 31 must be reversed, but we affirm the convictions on all other counts.

### A. *Failure To Prove an Essential Element of Count 31*

It is axiomatic that in a criminal prosecution, the government bears the burden of proving beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. *Davis v. United States,* 160 U.S. 469, 487, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895) (burden of proof "is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime"); *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Where the government has failed to present proof of an essential element of the crime, a judgment of conviction must be reversed and the indictment dismissed. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v.*

*Tavoularis,* 515 F.2d 1070, 1077 (2d Cir. 1975).

■ In the context of the present case, if there was no evidence that GX 31 was found in Berisha's possession, there was no proof as to its transfer to a person known to reside outside of California—an essential element of the offense charged under § 922(a)(5), *see* note 2 *supra* —and the defendants were entitled to acquittals on count 31. The government makes a number of arguments in its effort to have the convictions on count 31 sustained. We find none of them meritorious.

■ First, the government suggests that perhaps GX 31 was in fact identified by Agent Amaker as one of the guns seized from Berisha's apartment and that the transcript's reflection that Amaker identified only Exhibits 23 through 30, and not 31, was stenographic error. (*E.g.,* United States' brief on appeal at 9.) At the same time, however, the government concedes that the absence of any reference to GX 31 may have resulted from the Assistant United States Attorney's "oversight or mispeaking." (*Id.* n. *.) The government apparently did not move in the trial court for a correction of the record, and we are provided no creditable ground for concluding that GX 31 was identified as having been found in Berisha's possession.[4] We can hardly sustain a conviction on the basis of the government's speculation—equivocal, at that—that essential facts *may* have been placed in evidence.

---

**4.** The government also argues that we should infer that GX 31 was so identified by Amaker because

> [i]t seems obvious that if anyone at trial believed that GX 31 had not been identified as one of the guns seized at Berisha's apartment, Count 31 would have been dismissed at the same time as Counts 21 and 22 for the same reason those counts were dismissed. In any event, no such contention was ever made by the defendants.

(*Id.* at 10 n. *.) This contention borders on the disingenuous. It is true that counts 21 and 22 were dismissed for lack of proof that GX 21 and 22 had been found in New York; but they

were dismissed on motion of the government because the government had explicitly elected to withhold proof as to the seizure of those two guns in order not to compromise the identity of a confidential informant. Even accepting, however, the government's hypothesis that all counsel *believed* GX 31 had been identified, the record simply does not substantiate that belief; and whatever the court, the defendants, or trial counsel may have believed, "[i]t is transparently obvious that a verdict cannot be based on 'evidence' which the jury does not see or hear." *United States v. Barker,* 542 F.2d 479, 485 (8th Cir.1976).

The government's principal contention is that, if GX 31 was not identified as having been seized from Berisha's apartment, the defendants have waived the defect. The government argues that because the defendants' motions for acquittal did not explicitly refer to count 31 and did not pinpoint the deficiency in the government's proof, defendants are not entitled to raise the issue on appeal. We disagree. Both defendants moved pursuant to Fed.R. Crim.P. 29(a) for judgments of acquittal at the close of the evidence, and the very nature of such motions is to question the sufficiency of the evidence to support a conviction. *See United States v. Jones,* 174 F.2d 746, 748 (7th Cir.1949) (motion for acquittal "is a challenge to the Government in the presence of the court that the Government has failed in its proof"); 2 C. Wright, *Federal Practice and Procedure* § 466, at 654 (1982). Further, the defendant need not specify the ground of the motion in order to preserve a sufficiency claim for appeal. *United States v. Brothman,* 191 F.2d 70, 72–73 (2d Cir.1951); *United States v. Cox,* 593 F.2d 46, 48 (6th Cir. 1979); *United States v. Jones, supra,* 174 F.2d at 748; 8A *Moore's Federal Practice* ¶ 29.03[1], at 29-7 (2d ed. 1982) ("[T]he grounds for the motion need not be stated with specificity, at least not unless the government demands such a statement." (footnote omitted)); 2 C. Wright, *supra,* § 466, at 653.[5] Thus, when a defendant moves for acquittal, even without specifici-

ty as to the grounds, it is incumbent upon the government to review its proof as to the facts required to establish each element of each offense alleged. Its neglect to do so is not a charge upon the defendant.[6]

Further, we note that in the present case the defendants' Rule 29(a) motions were not without direction. Dushaj's attorney argued that "the government has a significant gap in the proof and that is in the area of the transportation from California to New York." (Tr. 299.) Gjurashaj's attorney argued similarly that "although clearly the evidence shows my client participated in purchases of guns in California, and some of these guns were found here in New York, there is no showing that he had anything to do with the guns moving from California to New York." (*Id.*) The government could hardly fail to recognize that its proof of the interstate transfer or transport of any particular gun was entirely circumstantial. Having failed, in the face of the defendants' motions, to be sure that it had introduced evidence of seizure in New York of each gun that was the subject of a specific count, the government is not entitled to complain now that it was disadvantaged because the defendants did not cite chapter and verse of the weakness of the case against them:

> Surely, the defendant does not have to lead the Government through the various steps of the trial to insure a proper record for the Government to stand upon. The Government cannot be heard to say it

5. The government's reliance on *United States v. Bonacorsa,* 528 F.2d 1218 (2d Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976), is misplaced. In *Bonacorsa* we held that "[w]here there are several specifications of falsity in a single count [of making false declarations before a grand jury], proof of any of the specifications is sufficient to support a verdict of guilty," *id.* at 1222 (footnote omitted), and that the defendant's failure to indicate which specifications he wished withdrawn from the indictment waived any claim on appeal. *Id.* There was no suggestion in *Bonacorsa* that the government had failed to establish an essential element of the crime charged.

6. We reject the government's suggestion that its failure to prove that GX 31 was found in Berisha's possession was merely "a technical

error concerning the proof" (United States' brief on appeal at 10), which, if not specifically objected to below, was waived. The authorities invoked by the government involved minor errors in the court's admission of evidence or in its instructions to the jury. By contrast, the prosecution's failure to adduce any evidence as to an essential element of the crime must be regarded as a "defect[ ] affecting substantial rights," Fed.R.Crim.P. 52(b), which the appellate court may therefore review even if the defendant did not bring it to the attention of the trial court, *id.* See, *e.g., United States v. Kaplan,* 586 F.2d 980 (2d Cir.1978), in which, although the defendant had not moved for a judgment of acquittal, we reversed because the government had failed to supply proof of an essential element. *Id.* at 982–83 & n. 4.

does not know the significance of a motion for acquittal.

*United States v. Jones, supra,* 174 F.2d at 748.

Accordingly, since the record does not reveal that there was any evidence of the interstate transfer or transport of GX 31, we reverse the defendants' convictions on count 31.

### B. *The Spillover Contention*

■ Defendants contend that, having recognized that there was no proof that GX 31 was found in New York, we must reverse their convictions on the other counts and remand those counts for retrial because the prosecutor's references in summation to GX 31 were highly prejudicial. They argue that the proof of interstate transport was weak and circumstantial and that the government's proof of such transport derived in part from the closeness in time between the defendants' purchase of particular guns in California and the discovery of those guns in New York. Since that temporal proximity was clearest with respect to GX 31, defendants argue, the jury was likely to have been influenced by the evidence as to GX 31 to convict defendants on the other counts. Our review of the evidence and the prosecutor's summation persuades us to the contrary.

The government's practical burden, in establishing that the defendants had unlawfully transferred guns to an unlicensed person known to reside in a state other than California, was to show that the guns seized from Berisha's residence in New York had been transferred to Berisha by the defendants. Though circumstantial, the evidence supporting this inference was ample. First, the government presented extensive evidence of the dates on which Dushaj and Gjurashaj bought guns in California. This evidence consisted in part of the testimony of persons who had sold the guns to them in California and in part of the business records of those sellers. It is true that the simplest evidence of a mere four-day interval between the defendants' California purchase of a gun and its discovery in Berisha's New York apartment was that regarding GX 31. But the evidence of the very same four-day interval was equally probative—though requiring an intermediate step through business records—with respect to seven other guns, GX 23 and 25–30. All of these records were the subject of the prosecutor's summation argument that the short interval indicated that Berisha had received the guns from the defendants. All were compelling. We are not persuaded that the discussion of GX 31 gave disproportionate emphasis to that gun.

Moreover, the proof that the guns seized from Berisha had been transferred by the defendants did not consist solely of evidence as to the shortness of the interval after the defendants' purchases. There was evidence that Berisha had accompanied the defendants to gun shows in California; there were recorded statements by Berisha to the confidential informant that Berisha would soon be receiving more guns and could supply any type the informant desired; and there was evidence of numerous telephone calls between Berisha's apartment and the telephones of Dushaj and Gjurashaj. In the circumstances we regard the effect of the prosecutor's references to GX 31 as harmless.

Finally, we note an item of proof offered against Dushaj alone. After his arrest, Dushaj admitted having purchased guns in California, admitted that he brought some and sent some to New York, and admitted that Berisha came to California to get some of them personally.

### CONCLUSION

As to each defendant the conviction on count 31 is reversed and count 31 is dismissed. In all other respects the judgments of conviction are affirmed.