983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary L. DODGE, Defendant-Appellant.
 No. 91-6481.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1993.
 
 Before MILBURN and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Gary L. Dodge appeals his conviction by jury verdict for receiving child pornography through the mail in violation of 18 U.S.C. § 2252(a)(2). The district court sentenced Dodge to pay a $4,000 fine and to serve twenty-one months imprisonment. On appeal, the issues are (1) whether there is sufficient evidence to support the verdict of guilty, (2) whether the district court erred in admitting certain testimony by a postal inspector, and (3) whether the controlled delivery of child pornography satisified the mailing requirement of 18 U.S.C. § 2252(a)(2). For the reasons that follow, we affirm.
 
 I.
 
 2
 Sometime before May 30, 1990, defendant Gary Dodge approached two different police informants in Louisville, Kentucky, and offered to pay them for providing him with young girls who were either "chickens," i.e., teenagers, or "eggs," i.e., preteenagers. Both informants reported these approaches to Detective Bill Burke, Louisville Police Department, who in turn contacted Postal Inspector Brad Reeves.
 
 
 3
 After identifying defendant as a postal employee, Inspector Reeves asked Postal Inspector Keller to test defendant for any interest in child pornography. Inspector Keller sent defendant a letter and a questionnaire. The letter introduced defendant to "Brad's Briefs," an undercover newsletter operated by Inspector Keller for the purpose of identifying persons interested in child pornography. It was accompanied by a questionnaire to be filled out by any person interested in membership in "Brad's Briefs." Defendant completed and returned the questionnaire, indicating his first choice of sexual materials as "preteen, non-sexual (strip, dance, shower, just lie there!)." J.A. 15. Defendant himself wrote in this language to describe his first choice, which was "other." Although the preference section listed seventeen kinds of sexual material, including materials other than child pornography, defendant's second, and only other, choice was "preteen sex-homosexual."
 
 
 4
 The letter accompanying the questionnaire directed the recipient not to identify himself unless he desired additional information. Defendant completed the questionnaire, identified himself, indicated his desire to join the club and receive "Brad's Briefs," and returned the questionnaire to Inspector Keller. Inspector Keller enrolled defendant as a member of "Brad's Briefs" and sent him a letter assigning him a member number and giving general information about how to answer advertisements appearing in the newsletter. He also informed Inspector Reeves of the results of his correspondence with defendant.
 
 
 5
 Interpreting defendant's responses on the questionnaire as evidencing an interest in child pornography, Inspector Reeves asked Postal Inspector Becky Powers to test defendant further. Inspector Powers, who ran an undercover videotape operation known as Dream Video, sent a letter to defendant advising him that the company had obtained videotapes "aimed at pleasing the 'sexually exotic-minded man,' " and offering defendant membership in a video club that published a catalogue of those videotapes. The initial letter also apologized to any addressee to whom the letter had been sent in error, and it provided the addressee an opportunity to have his or her name removed from the mailing list. Ignoring the box, "No, I am not interested," defendant checked the box, "Yes, I am interested in the products you offer. I have checked on the list below the subjects that interest me." Defendant then indicated his preference for materials involving models under the age of fifteen in situations with "girls alone." The final paragraph of the questionnaire stated:
 
 
 6
 By my signature below, I certify I am an adult and I desire to purchase and receive sexually explicit materials. I understand the videos you are selling feature young males and young females and that this material is considered illegal under current law. I do not want the notation "Sexually Oriented Material" to appear on the outside of any mail that is sent to me. I promise to keep the source of any material I receive from Dream Videos confidential.
 
 
 7
 J.A. 41-42 (emphasis added).
 
 
 8
 Based on defendant's response, Inspector Powers sent defendant a Dream Video catalogue on October 26, 1990. The catalogue contained graphic descriptions of the videotapes offered for sale, and defendant ordered a videotape entitled "Pairs of Young Love," which was described as depicting various sex acts between two eight-year-old boys and two nine-year-old girls.[1] After receiving this order from the defendant on November 8, 1990, Inspector Powers mailed a copy of "Pairs of Young Love" to Inspector Reeves, together with all of the papers defendant had sent in.
 
 
 9
 During the same period in which he corresponded with Dream Video regarding his purchase of the videotape, defendant also answered two advertisements in "Brad's Briefs." The first ad to which defendant responded read:
 
 
 10
 (1001 N.Y.) Divorce necessitates the liquidation of 20 years worth of my collection. Something for everyone. Send SASE and your special interests for my listing. First come, first serve. May consider mail option for special items.
 
 
 11
 J.A. 23.
 
 Defendant's response was:
 
 12
 Please send a sample of your collection. I am interested in girls 10 to 12. I will pay in advance for any further shipments. If this is not satisfactory, send your phone number; and I'll call you please.
 
 
 13
 J.A. 24.
 
 
 14
 The other advertisement to which defendant responded read:
 
 
 15
 (1012 New York). Unshockable, sincere, SWM, has x-rated videos, photos, and films of white, black and oriental PTT girls. Prefer trading but will buy high quality videos, photos and films. Also seek meetings. Have equipment for videos and photos. Can also copy videos and photos and return originals to owners if preferred. Only sincere need respond. Discretion assured and expected.
 
 
 16
 J.A. 24.
 
 Defendant's response was:
 
 17
 Please send a sample of your collection. I have nothing yet to trade, but will pay in advance for any further merchandise. Send to Wayne Dodge at return address (PLEASE).
 
 
 18
 J.A. 25. Inspector Keller received defendant's responses to the "Brad's Briefs" advertisements on November 19, 1990 and advised Inspector Reeves of the activity.
 
 
 19
 When Inspector Reeves received "Pairs of Young Love" from Inspector Powers, he packaged it in the form of a mailed parcel, then drove with it to Louisville, Kentucky, where, on December 14, 1990, a controlled delivery of the videotape was made to defendant when he called for the parcel at the post office where he maintained his post office box. Inspector Reeves and other agents followed defendant home with his parcel and executed a search warrant they had previously obtained for the premises. They found the package unopened on defendant's kitchen table. They also found another videotape containing segments of a childrens' exercise class tape recorded from the Disney Channel. During normal play, this videotape frequently stopped action at various places where children opened their legs or exercised on their hands and knees. The stop-action was apparently accomplished by dubbing from an original tape recording and freezing certain frames.
 
 
 20
 On September 20, 1991, defendant was found guilty under a single-count indictment charging him with violating 18 U.S.C. § 2252(a)(2) by receiving through the mail a videotape of minors engaged in sexually explicit conduct. On December 13, 1991, defendant was sentenced to twenty-one months imprisonment and ordered to pay a fine of $4,000. This timely appeal followed.
 
 II.
 A.
 
 21
 At the conclusion of all of the proof at trial, defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on the ground that the government had failed to prove that defendant had knowledge of the contents of the parcel he received. He now contends the evidence was insufficient to support his conviction because the government also failed to prove that he was predisposed to commit this crime.
 
 
 22
 The government argues that this court should hold that defendant has waived this issue because he did not mention it in his motion for judgment of acquittal. In United States v. Cox, 593 F.2d 46, 48 (6th Cir.1979), however, this court noted that a motion for acquittal pursuant to Rule 29
 
 
 23
 is a challenge to the Government in the presence of the court that the Government has failed in its proof. The motion is not required by the rules to be in writing or to specify the grounds therefor.
 
 
 24
 Id. (quoting United States v. Jones, 174 F.2d 746, 748 (7th Cir.1949)). More recently, in United States v. Gjurashaj, 706 F.2d 395, 399 (2d Cir.1983), the Second Circuit, citing Cox, declared the same rule, holding that "the government is not entitled to complain now that it was disadvantaged because the defendants did not cite chapter and verse of the weakness of the case against them...." Thus, defendant's motion preserved his challenge to the sufficiency of the proof in this case.
 
 
 25
 Defendant argued the defense of entrapment at trial and now specifically challenges the government's proof of his predisposition to commit the offense. When a defendant challenges the sufficiency of the evidence used to convict him, the relevant question on appeal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979), quoted in United States v. Clark, 928 F.2d 733, 736 (6th Cir.) (per curiam), cert. denied, 112 S.Ct. 144 and 112 S.Ct. 240 (1991).
 
 
 26
 Defendant relies principally on Jacobson v. United States, --- U.S. ----, 112 S.Ct. 1535 (1992), in which the Supreme Court reversed the conviction of a defendant for violating 18 U.S.C. § 2552(a)(2) because the government's proof of predisposition was extremely weak. In Jacobson, the Court found that the only evidence of predisposition was the defendant's 1984 order and receipt of two Bare Boys magazines, which depicted nude preteen and teenage boys in various natural settings.
 
 
 27
 The core of the Court's reasoning in Jacobson has to do with whether the government's actions contributed to the petitioner's predisposition to commit the crime in question.
 
 
 28
 Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner--who must be presumed to know the law--had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.
 
 
 29
 But that is not what happened here. By the time petitioner finally placed his order, he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations. Therefore, although he had become predisposed to break the law by May 1987, it is our view that the Government did not prove that this predisposition was independent and not the product of the attention that Government had directed at petitioner since January 1985.
 
 
 30
 Id., 112 S.Ct. at 1541 (citation omitted) (emphasis added).
 
 
 31
 The Supreme Court found that the petitioner's receipt of the Bare Boy magazines in 1984 was scant proof of his predisposition to commit an illegal act because in 1984, when petitioner received the magazines, neither state nor federal law forbade their possession. As there was no other proof of predisposition before petitioner's contact with the government, the Court reversed petitioner's conviction for lack of evidence.
 
 
 32
 Jacobson is distinguishable from this case on its facts, particularly its facts relating to reluctance. The Supreme Court in Jacobson emphasized how Jacobson held out over a two and one-half year period against a government bombardment featuring suggestions by the government to join pornography clubs, letters from a bogus pen pal, letters condemning the current regime of censorship of child pornography, and child pornography catalogues. The Court distinguished those facts from a case in which a defendant "promptly availed himself" of the opportunity to acquire child pornography. Id.
 
 
 33
 This court has also identified the presence or absence of reluctance to engage in criminal activity as "[t]he most important factor in determining the lack of predisposition...." United States v. McLernon, 746 F.2d 1098, 1113 (6th Cir.1984); accord United States v. Silva, 846 F.2d 352, 355 (6th Cir.), cert. denied, 488 U.S. 941 (1988). If predisposition is an inverse function of reluctance, as the cases hold, then there is ample proof of predisposition in this case from defendant's utter lack of reluctance. Defendant promptly answered the first questionnaire and specified in his own words the child pornography he preferred. He subscribed to "Brad's Briefs" at the first opportunity, and as soon as he received that newsletter he answered its advertisements and urgently solicited materials dealing with girls 10 to 12 years of age. On another track, defendant simultaneously obtained from Dream Video a catalogue of child pornography and ordered a tape that was graphically described therein as depicting sex acts between children. He knew at the time of his order that this videotape would contain illegal material because the introductory letter sent by Dream Video stated that the videotapes it sold featured young males and females and that they were considered illegal. This information in no way deterred defendant, who ordered promptly.
 
 
 34
 Considering that defendant's predisposition was established before any contact with the government by the evidence that he was seeking out children to photograph in the nude[2] and was already tape recording childrens' exercise classes, the government amply proved that defendant's predisposition to obtain child pornography existed independent of and prior to any contact he had with the government. Once contact had been made, defendant's predisposition was further demonstrated by the eagerness with which he responded to every offer by the government. Even after being told directly that the materials available were illegal, defendant ordered a videotape he knew contained child pornography. Thus, both before and after his contact with the government, defendant was and remained predisposed to commit the crime with which he was charged. Cf. United States v. LaChapelle, 969 F.2d 632, 635-36 (8th Cir.1992) (distinguishing Jacobson on facts similar to those in this case). Viewed in the light most favorable to the government, there is ample evidence to support the finding of predisposition.
 
 B.
 
 35
 Defendant next argues that the district court erred in allowing Postal Inspector Reeves to testify that undercover techniques are used in the investigation of child pornography trafficking because "this is an underground society, if you will." J.A. 62. Defendant's objection was to the effect that Inspector Reeves was not qualified to give "his opinion of the type and character of these people that are involved...." J.A. 62. The court overruled defendant's objection because it believed Inspector Reeves possessed "sufficient credentials in the area based on his testimony to be able to offer an opinion as to how these investigations are conducted...." J.A. 63. After defendant's objection was overruled, Inspector Reeves testified that people involved in child pornography are "very paranoid" and, therefore, "the best way to approach them is through an undercover operation." J.A. 63. No objection was made to the description of child pornographers as being "paranoid."
 
 
 36
 Defendant has waived any objection to Inspector Reeves' comment concerning paranoia by his failure to object to it. Without a contemporaneous objection, the issue is not preserved for appeal. United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992); Fed.R.Evid. 103(a)(1).
 
 
 37
 As to Inspector Reeves' explanation that postal investigations of child pornographers are often undercover because child pornographers form an "underground society," Reeves was testifying from his experience as a professional investigator that, because child pornography materials are "not readily available on the street ...," J.A. 62, those interested in dealing in such materials must do so "underground." Because that is the case, investigations of this activity must often involve the false identity and stratagem necessary to allow investigators to join that underground. Inspector Reeves was certainly qualified to state the general reasons why a particular mode of investigation was employed. See United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990) (law officers may testify concerning modus operandi of particular crimes and investigative techniques employed to discover them), cert. denied, 111 S.Ct. 978 (1991). To the extent that the evidence called for was relevant--and there was no challenge to relevancy--Inspector Reeves' answer was unobjectionable.
 
 
 38
 Defendant also argues that the district court erred in allowing Inspector Reeves to describe the videotape of the childrens' exercise class as "child erotica material." J.A. 81. When Inspector Reeves categorized the videotape in question as child erotica material and then defined such material as "any visual material of children that is not sexually explicit that is used by a person for sexual arousal-or their gratification ...," J.A. 82-83, he offered an opinion that the videotape was made for purposes of sexual arousal or gratification.
 
 
 39
 Generally, this court reviews claims concerning the erroneous admission of evidence for abuse of discretion. MacNaughton v. United States, 888 F.2d 418, 422 (6th Cir.1989). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).
 
 
 40
 Strictly speaking, Inspector Reeves was not qualified as an expert on the question of the arousal of the human sexual response or the gratification thereof, and, therefore, the admission of his opinion on that subject was error. It does not fall within the kind of lay opinion permitted by Federal Rule of Evidence 701 because it is not "rationally based on the perception of the witness...."[3] Arguably, one could not determine from merely watching the videotape that its purposes were erotic. Had the videotape been found in the possession of an exercise physiologist, it might be concluded that it represented a study in exercise kinetics, flexibility, or proper positioning.
 
 
 41
 However, any error in the admission of this testimony was harmless beyond a reasonable doubt. Defendant was permitted to cross-examine Inspector Reeves concerning his characterization of the videotape, and the jury, which viewed the videotape, was perfectly free to make up its own mind about its probable uses. Under these circumstances, the admission of Inspector Reeves' characterization of the tape recording could not have affected the outcome of this case or the substantial rights of the defendant, Fed.R.Crim.P. 52(a). Therefore, the admission of the evidence complained of was harmless error. United States v. Lane, 474 U.S. 438, 445 (1986) (duty of reviewing court is to consider trial record as a whole and to ignore errors that are harmless); United States v. Cunningham, 804 F.2d 58, 61 (6th Cir.1986), cert. denied, 481 U.S. 1037 (1987).
 
 C.
 
 42
 Finally, defendant argues that this court should overrule its previous decision in United States v. Moore, 916 F.2d 1131 (6th Cir.1990), wherein it held that a controlled delivery of child pornography satisfies the mailing requirements of 18 U.S.C. § 2252(a)(2). Because one panel of this court may not overrule another, Moore is the law of this circuit until and unless it is overruled by the court en banc. See Agristor Leasing v. A.O. Smith Harvestore Prods., 869 F.2d 264, 268 (6th Cir.1989).
 
 III.
 
 43
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The description was as follows: "Ronnie and Tom, both 8, and Tammy and Sue, both 9 are all cousins; and what love there is between them, as Tammy sucks Ronnie, Sue pleases Tom by taking his penis in her mouth. Not to be outdone, the boys take turns eating the girls. After that snack, they pair up again and the f------ begins." J.A. 46
 
 
 [2]
 Defendant admitted this on cross-examination. J.A. 167
 
 
 [3]
 Federal Rule of Evidence 701 permits a lay witness to state "inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."