**H. H. BECKANSTIN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 15773.

United States Court of Appeals
Fifth Circuit.

April 25, 1956.

Rehearing Denied May 24, 1956.

James I. McCain, New Orleans, La., for appellant.

Jack C. Benjamin, Asst. U. S. Atty., New Orleans, La., George R. Blue, U. S. Atty., New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The appellant, H. H. Beckanstin, was convicted on one count of an indictment charging perjury in a civil suit in the United States District Court for the Eastern District of Louisiana. The indictment was in three counts, but two of them were dismissed. The indictment was brought under 18 U.S.C.A. Sec. 1621,[1] and the prosecution was based upon appellant's alleged false statement as to where he graduated from architectural school. His attorney asked appellant: "What architectural school did you graduate from?"; and appellant responded "Massachusetts Institute of Technology." He admitted later in the trial that, while he had attended that school, he had not graduated therefrom. The case is before us on appellant's contentions that the testimony was not about a material matter and that the evidence shows, as a matter of law, that appellant had no intent to deceive.

The alleged perjured testimony was given in a civil damage suit brought in the Court below by appellant against one Emanuel Grizzaffi and tried in 1951. That was a suit seeking damages appellant alleged he had sustained by reason of an unsuccessful criminal prosecution Grizzaffi had instituted against him in a Louisiana State Court. That criminal prosecution had been instituted as the result of a controversy between appellant and Grizzaffi in connection with a house appellant, as contractor, had built for Grizzaffi in 1945.

It is important to understand the setting in which the alleged perjured testimony was given in order to determine the real quality and import of the act of appellant in testifying to what, according to his unequivocal statement, was not true. He had just been placed on the stand by his attorney, Mr. Blanchard, at the beginning of his civil damage suit against Grizzaffi. He was first asked to give his name, his residence, and his profession and the attorney then asked, "What architectural school did you graduate from?" Immediately after appellant had made his answer, "Massachu-

1. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, * * *."

setts Institute of Technology", the Court interrupted the examination with a series of questions concerning a statement appellant had made to the effect that he was registered as an architect in every state of the Union. This had the effect of taking the attention of all engaged in the trial from the quoted question and answer with respect to which appellant is now being prosecuted.

No one connected with appellant's case then on trial seemed to have caught the misstatement except his wife, then his fiancée. That night, while she, appellant and the lawyer were at dinner, she asked if appellant had not testified that he graduated from M. I. T. Appellant immediately responded, "Oh, no"—that he had merely attended the school. She countered with the statement that she understood that he answered that he had graduated from the school; and the three had a discussion as to whether the mistake, if made, should not be cleared up. The lawyer stated that he did not consider it important, and the matter was then dropped and the mistake was not voluntarily corrected. Grizzaffii's attorney accordingly seized the opportunity to score a telling point and confronted appellant with a telegram from M. I. T. stating that he had attended the school, but had not graduated; and appellant promptly conceded that this was true.

The foregoing sequence of events was established in the Court below in this trial by the testimony of Mr. Blanchard, the appellant and his wife. The Court below took hold of Mr. Blanchard, examining him vigorously in an effort to bring out from him that he had used the word "graduate" advisedly and because his client, the appellant, had so informed him. Mr. Blanchard denied that categorically and stated that appellant had not told him that he had graduated from any school of architecture, and that he had chosen his words inadvertently and without any thought of obtaining any advantage. At the time he asked the question he did not even know which school appellant had attended. Appellant testified that he did not know he had stated that he was a graduate of M. I. T., not catching the form of the question; that he was manifestly confused in his answer, that he never intended to convey that impression or to deceive anyone. His attorney verified these statements, also disclaiming any ulterior motive. In the face of this undisputed testimony we are of the opinion that the Government failed to establish the materiality of the testimony or the presence of the essential ingredient of intent to deceive.

The testimony upon which the prosecution is predicated was given during the introductory stage of the examination of the witness. The whole series of questions was such as is normally expected when a litigant or witness is being identified to court and jury. But for the prompt interposition of the Court in connection with an answer to a previous question, it is likely that the mistake would have been caught at the time. At all events, it is clear that the answer was a mistake and that it would have been cleared up promptly when the young lady brought it to the attention of the appellant and his attorney except for the advice of the attorney that the question and answer were unimportant and that appellant ought not to be concerned about it.

■■ The materiality of an alleged false statement under the statute defining perjury is for the court,[2] and the Court below charged the jury, as a matter of law, that the statement was material. With this we do not agree. The question and answer were preliminary and for the purpose of identification. They could not, under the circumstances, have had any material bearing on the issue in a suit for damages for false arrest and malicious prosecution. Whether or not Beckanstin had graduated from the school was of no consequence in resolving the issues involved in that suit.

2. Harrell v. United States, 5 Cir., 1955, 220 F.2d 516, and Blackmon v. United States, 5 Cir., 1940, 108 F.2d 572.

Under the facts here set forth the trial Court should have ruled that the false testimony was not, in fact, material.

██ Moreover, in order to constitute perjury, a false statement must be made with criminal intent, that is, with intent to deceive, and must be wilfully, deliberately, knowingly and corruptly false. The positive evidence here all shows that, although the answer was false, the witness had not grasped the form of the question, and had not knowingly or wilfully made a false answer with intent to deceive. The circumstances corroborate the positive testimony.

██ The advice of counsel is also important in determining whether appellant made the statement with a corrupt motive. As soon as he was acquainted with the fact that he had probably made a misleading statement he was ready to correct it, but the attorney did not consider that course necessary or advisable.[3] Willingness to correct the misstatement, though not ordinarily a defense to a perjury prosecution, is potent to negative a wilful intent to swear falsely.[4]

The Court of Appeals of the Third Circuit, in a case involving facts not unlike those before us, expressed the general rule thus:[5] "To sustain a conviction for perjury the burden is upon the government to establish by substantial evidence, excluding every other hypothesis than that of guilt, the essential elements of the crime charged. * * * An essential element is that the defendant must have acted with a criminal intent—he must have believed that what he swore to was false and he must have had the intent to deceive. If there was a lack of consciousness of the nature of the statement made or it was inadvertently made or there was a mistake of the import, there was no corrupt motive. * * * Assuming that the defendant made a false statement when he stated that he 'got cash for this check', it is settled that a false statement which is the result of an honest mistake is not perjury. People are prone to use colloquial terms in describing events and in doing so err in failing to adhere to technical terms but such error is insufficient to establish perjury. At most the defendant's statement was equivocal. In this essential regard the evidence falls far short of the well-settled requirement that the elements of the crime of perjury must be proved by clear and convincing testimony to a moral certainty and beyond all reasonable doubt. Evidence which is merely probable is not enough." [6]

3. Cf. 70 U.S.J. Sec. 17(5) and succeeding sections.

4. Ib. and United States v. Norris, 1937, 300 U.S. 564, 576, 57 S.Ct. 535, 81 L.Ed. 808.

5. United States v. Rose, 3 Cir., 1954, 215 F.2d 617, 622, 623.

6. The same Court reached a like result and used similar language in United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 306–307. This case, as well as the Rose case supra, cited as authority our case of McWhorter v. United States, 5 Cir., 1952, 193 F.2d 982. Both of these cases cite a wealth of authority tending to sustain the principles quoted from the Rose case.

Fotie v. United States, 8 Cir., 1943, 137 F.2d 831, 841–842, involved an answer based upon a question which the witness had apparently not fully understood. Because of this and the fact that the trial Court dealt with the question and answer out of context caused the Court to reverse a conviction entered by a District Judge sitting without jury.

Smith v. United States, 6 Cir., 1948, 169 F.2d 118, citing Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495, Fraser v. United States, 6 Cir., 1944, 145 F.2d 145, certiorari denied 324 U.S. 842, 65 S.Ct. 586, 89 L.Ed. 1403, and other cases, is authority for the rule that, in perjury prosecutions, a preliminary question is presented to the Court whether the evidence upon which the prosecution is based is of sufficient quantity and quality to warrant submission to the jury, having in mind that, "To sustain a conviction, it must be shown by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant committed willful and corrupt perjury." [169 F.2d 121.]

And see also Spaeth v. United States, 6 Cir., 1955, 218 F.2d 361.

While ordinarily knowledge and intent are matters to be passed upon by the jury, a prosecution must fail if the Government does not produce sufficient testimony to warrant, under the strict rules of proof applying in such cases, the jury in finding the presence of these necessary ingredients of the crime of perjury. We hold, therefore, that the Court below should have directed the jury to acquit appellant, and its judgment is reversed and the cause remanded for the entry of such a judgment.

Reversed.