UNITED STATES of America, Appellee,

v.

Andrew J. LOCOCO, Appellant.

No. 26336.

United States Court of Appeals, Ninth Circuit.

Sept. 27, 1971.

Order Filed Dec. 28, 1971.
Rehearing Denied Feb. 9, 1972.

John J. Flynn (argued), Michael D Kimerer, of Flynn, Treon, Kimerer & Thinnes, Phoenix, Ariz., for appellant.

Michael Lightfoot, Asst U. S. Atty., (argued) Robert L. Meyer, U. S. Atty., Gerald Uelman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, KOELSCH, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Lococo appeals from his conviction upon one count of perjury based upon his false testimony before a federal grand jury that he had not talked to Ray Mirr during the previous year.[1] Lococo con-

1. Lococo was indicted for giving the following testimony:

"Q. Do you talk to him [Mirr] frequently?

tends that (1) his testimony was not material to the grand jury's investigation, (2) the district court prejudicially erred in admitting, over his objections, the records of about 83 telephone calls to Mirr's home and business telephone charged to Lococo's business telephone, and (3) the evidence was insufficient to sustain the conviction.

Lococo and his wife are the sole stockholders of a corporation that owns and operates the Cockatoo restaurant. They directly own and operate a hotel, the Cockatoo Inn. The Lococos' home is located on property adjoining the hotel and restaurant complex.

In December 1968, a federal grand jury was convened in Los Angeles to investigate interstate wagering, bookmaking, loan sharking, bribery, and sporting contests. On April 11 and June 19, 1969, two grand jury witnesses implicated Lococo in bookmaking. Prior to Lococo's appearance, the grand jury was informed that Mirr had been involved in interstate gambling.

On June 26, 1969, Lococo appeared before the grand jury. He was initially informed that the grand jury was investigating "possible violations of the Federal laws relating to interstate wagering activity, interstate transportation and aid of racketeering, bribery and sporting contests, and possible other Federal offenses." After Lococo recited his name, address, and occupation, the grand jury explained that it was "concerned with a series of fixed horse races that were run in the State of California during the past year." Lococo denied any knowledge of or profit from the races. Lococo was later asked if he knew several different people. He admitted friendship with Ray Mirr whom he had known since his childhood in Milwaukee, but he said that he had not spoken to Mirr within the past year.

After completing his testimony, Lococo examined his restaurant's telephone bills and discovered a large number of calls to Milwaukee where Mirr lived and worked. Lococo tried unsuccessfully to contact his brother Nick Lococo ("Nick"). Nick spent most of his time in and around the Cockatoo. The following day Lococo flew to Milwaukee where he met Mirr. The substance of their conversations, reiterated by Mirr to the grand jury in July 1969, was that Mirr reminded Lococo that Lococo had called him a few times in 1968 and that Mirr told him that Nick had called him many times. Over Lococo's objection based on an assertion of his Fifth Amendment privilege, the grand jury ordered him to turn over the Cockatoo's telephone and travel records.

■ In August 1969, Lococo's lawyers discussed his testimony with the United States Attorney who offered to let Lococo reappear before the grand jury, but who also admonished Lococo's counsel that correction of any errors in the testimony would not benefit Lococo.[2] Counsel then advised Lococo not to reappear. Lococo's indictment for perjury followed.

■ Lococo's conviction cannot be sustained unless his false testimony was

---

A. No.
Q. When was the last time you talked to him?
A. Gosh, I don't remember. Quite some time ago.
Q. What would be your reason for talking to Mr. Mirr by telephone?
A. Well, I haven't talked to him.
Q. You have not talked to Mr. Mirr?
A. You mean the last time I spoke to him?
Q. Yes.
A. Could have been that—I really don't remember now. I don't even remember when I spoke to Ray last, it's so long.

Q. All right. Would you have spoken to Ray Mirr within the past year?
A. No."

2. If Lococo intentionally lied to the grand jury, his later recantation would not erase the perjury (United States v. Norris (1937) 300 U.S. 564, 57 S.Ct. 432, 81 L. Ed. 859), but willingness to correct a misstatement is relevant to the issue of intent (Beckanstin v. United States (5th Cir. 1956) 232 F.2d 1; United States v. Geller (S.D.N.Y.1957) 154 F.Supp. 727).

material to the grand jury's investigation. (18 U.S.C. § 1621; United States v. Edmondson (5th Cir. 1969) 410 F.2d 670, 672–673, cert. denied 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430; United States v. McFarland (2d Cir. 1966) 371 F.2d 701, 703, cert. denied (1967) 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624.) He contends that the grand jury was investigating fixed horse races in California and related wagering and that his testimony was immaterial to that investigation because the Government did not offer evidence connecting his calls to that subject matter.

▰▰▰ Lococo's emphasis on the Government's failure to show a nexus between his calls to Mirr and the California races is misplaced. The Government was not obliged to prove the connection in order to establish materiality. (*See* United States v. Dippolito (9th Cir. 1970) 433 F.2d 1049, 1050, cert. denied (1971) 401 U.S. 940, 91 S.Ct. 939, 28 L. Ed.2d 220 (1971).) False testimony before a grand jury is material if it "has a natural tendency to influence the Grand Jury in its investigation" (*id.* at 1050); the Government need not prove that the perjured testimony actually impeded the investigation (Vitello v. United States (9th Cir. 1970) 425 F.2d 416, 424, cert. denied (1970) 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50). Moreover, false testimony that tends to influence the grand jury need not be directed to the primary subject of the investigation; it is material if it is relevant to any subsidiary issue under consideration by the tribunal. (Barnes v. United States (5th Cir. 1967) 378 F.2d 646, 649, cert. denied (1969) 390 U.S. 972, 88 S.Ct. 1056, 19 L.Ed.2d 1184; *see* United States v. Stone (2d Cir. 1970) 429 F.2d 138, 140; Blackmon v. United States (5th Cir. 1940) 108 F.2d 572, 573–574.)

▰ Prior to Lococo's appearance, the grand jury had been told that Lococo was engaged in bookmaking and that Mirr was a gambler. Had Lococo admitted that he had telephoned Mirr, his testimony, considered with the other information before the grand jury, might have supplied a link between Mirr and an alleged California gambler bearing on the interstate gambling activities that the grand jury was probing. Lococo's false statements curbed the flow of information to the grand jury. We cannot say that his diversion did not tend to influence the investigation. His testimony was material.[3]

▰ We turn to Lococo's claims of error in the admission of evidence. His first contention requires little comment. He argues that the Fifth Amendment privilege should be extended to the records of a corporation when the corporation is wholly owned by the witness asserting the privilege and his wife. We have rejected that argument in Fineberg v. United States (9th Cir. 1968) 393 F.2d 417; Wild v. Brewer (9th Cir. 1964) 329 F.2d 924, cert. denied (1964) 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185, to which decisions we adhere.

Next he contends that there was prejudicial error in admitting records of 83 out of the 90 calls listed to Mirr's telephone numbers billed to the Cockatoo's number. Lococo admitted that he made 7 of the 90 calls.[4] He argues that the records of all the calls, except those 7, were inadmissible because the Government failed to lay the necessary foundation for their admission against him.

▰ The records of the calls were inadmissible in absence of proof that Lococo made the calls or caused them to be made. There was no direct proof that Lococo made more than the 7 identified calls. Of course, circumstantial evidence may be used to identify a de-

---

3. Materiality is tested as of the time the investigation is being made. Later proof that a truthful statement would not have helped the grand jury does not render the false testimony immaterial. United States v. Stone (2d Cir. 1970) 429 F.2d 138; United States v. McFarland, *supra*, 371 F.2d at 703–704; United States v. Siegel (2d Cir. 1959) 263 F.2d 530, cert. denied 359 U.S. 1012, 79 S.Ct. 1147, 3 L.Ed.2d 1035.

4. There was evidence that several of the calls were about football games; at least one of them concerned a requested $500 loan to Mirr; two calls were made about hotel accommodations for Mirr's relatives.

fendant as the caller. (United States v. Roselli (9th Cir. 1970) 432 F.2d 879, cert. denied (1971) (401 U.S. 924; Carbo v. United States (9th Cir 1963) 314 F.2d 718, cert. denied Palermo v. United States, (1964) 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498.) For example, there may be evidence of conduct by a defendant or by others so tied to the telephone calls that a discernible pattern emerges by which the identity of the caller is revealed, as in *Roselli*, or there may be travel records that tend to identify the caller, as is true of two of the admitted calls in this case,[5] or access to the particular phone may be so limited that there is high probability that one person placed the calls. The overwhelming majority of the listed calls were not connected to Lococo by anything other than the telephone numbers themselves. Access to the Cockatoo number was not limited to Lococo. Indeed, the uncontradicted evidence was that Nick had the use of that telephone and that Nick called Mirr at least once a week and sometimes daily. There was no evidence that Nick was acting under Lococo's direction in placing those calls.

Was the error in admitting the bulk of the records prejudicial? Under the circumstances of this case, we think that that is an issue the district court should first consider. The critical issue was whether or not Lococo deliberately lied when he told the grand jury that he had not talked to Mirr during the prior year.

Had Lococo made 90 calls to Mirr during that time, rather than 7, it is inconceivable that he could have been honestly mistaken in his testimony before the grand jury. The quantity of calls was considered by the district court.[6]

Aside from the volume of calls, the circumstantial evidence upon the intent

issue was delicately balanced. Lococo points to evidence that he made many long-distance calls every day in the course of his business, to support an inference that he forgot about the few admitted calls. He also refers to his abortive efforts to correct his testimony, to the somewhat confusing line of interrogation that preceded his false statements, and to the testimony of several prominent character witnesses who testified on his behalf. The Government draws contrary inferences from Lococo's other conduct. We think the district court should determine whether it finds the admission of the records of a large number of "unidentified" phone calls was or was not a crucial element in his weighing the evidence against Lococo. In other words, was there *other* evidence sufficient to convict, beyond a reasonable doubt?

The cause is remanded temporarily to the district court judge to permit him to place his findings and conclusions in writing, certify them to this court, and return the record, so augmented, to this court. On this remand the entire record shall be returned to the trial court. Upon the receipt of the clerk of this court of the entire augmented record, the appeal will again be forthwith submitted to this same panel, without further argument, unless later ordered.

### Order

 This court has reviewed the district court's findings and conclusions made upon limited remand of the cause. Upon the basis of those findings, this court concludes that error in the admission of the telephone records was not prejudicial and that the admissible evidence was sufficient to sustain the conviction. The judgment is ordered affirmed.

---

5. Travel records suggested at least a possibility that 3 other calls might be attributed to Lococo.

6. The case was tried by the court without a jury. While considering the evidence, the court observed:
 "The defendant is guilty, it would seem to me, without looking at all the other calls made although if they tend to prove anything, and I am not saying how strongly they do, they do tend to show that numerous, numerous, numerous calls were made from Mr. Lococo's number. That not all of those, as the witness Mirr has said, even as the defendant himself will admit, came from Nick. And there wouldn't have been anybody else we know of that could have or would have called Mr. Mirr."