**UNITED STATES of America, Appellee,**

v.

**Armand GOGUEN, Defendant, Appellant.**

**No. 83–1108.**

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1983.

Decided Dec. 19, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 24, 1984.

Mark G. Miliotis, Malden, Mass., by appointment of the Court, for appellant.

William F. Weld, United States Attorney, Boston, Mass., for appellee.

Before BREYER, Circuit Judge, TIMBERS,* Senior Circuit Judge, and SMITH,** Senior District Judge.

* Of the Second Circuit, by designation.

** Of the District of Montana, by designation.

1. Section 1623(a) provides in relevant part:

TIMBERS, Circuit Judge.

Armand Goguen appeals from his conviction in the District of Massachusetts after a jury trial for violating 18 U.S.C. § 1623(a) (1982),[1] which proscribes false declarations made knowingly before a federal court or grand jury. He was sentenced on February 7, 1983, to three years in prison. He has been incarcerated during the pendency of this appeal. We affirm.

## I.

### FACTS AND PRIOR PROCEEDINGS

The events which gave rise to Goguen's false declarations occurred during the Thanksgiving weekend in 1981. At 2:35 A.M. on that Saturday, November 28, a fire broke out in the Hutchinson Wharf Building in Lynn, Massachusetts. It was a fire of such great magnitude that, before it was completely extinguished some two weeks later, it had completely destroyed eighteen buildings, partially destroyed seven or eight more, and involved some 700 firefighters from the Lynn area. The fire received national news attention on the "Today Show", which was aired two mornings later on Monday, November 30.

A federal investigation of the fire was undertaken by the Bureau of Alcohol, Tobacco and Firearms (ATF) pursuant to 18 U.S.C. § 1952 (1982). *See United States v. Bubar*, 567 F.2d 192, 195 (2d Cir.), *cert. denied*, 434 U.S. 872 (1977). During the investigation, Special Agent Laurence Murray of the ATF interviewed Goguen as to his whereabouts at the time of the Lynn fire. Murray's attention was focused on Goguen because of the latter's alleged past connections with suspicious fire activity in the greater Boston area. During the interview, which took place on June 17, 1982, Goguen unequivocally stated that at all times during the period from November 1 or 2, 1981, to approximately December 20, 1981, he was in the State of Florida.

"(a) Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both."

As the investigation progressed, information was uncovered that Goguen indeed had been in Lynn around noontime on Friday, November 27. Goguen does not challenge the accuracy of this information.

On July 8, 1982, Goguen was called to testify before a federal grand jury convened to investigate the Lynn fire. Prior to Goguen's appearance before the grand jury, it had heard testimony that Goguen was not in Florida on November 27. Immediately preceding Goguen's appearance, the members of the grand jury were asked by the Assistant United States Attorney (AUSA) not to "tip off" Goguen that they had information that he was not in Florida on November 27.

During Goguen's grand jury testimony, he was questioned by the AUSA. The relevant excerpts of that testimony, which is the subject matter of this prosecution, were as follows:

"Q. Between the time you drove down [on] November 1st or 2nd, and you drove back up on approximately the 24th of December, 1981, did you come back up to Massachusetts?

A. Before that? No.

Q. I mean between those two periods of time.

A. No.

Q. Did you leave Florida during those periods of time?

A. No.

\* \* \* \* \* \*

Q. So you are sure you were not in Massachusetts from the time you left Massachusetts [on] November 1st or 2nd of 1981 until you came back the day before Christmas in 1981; is that correct?

A. Yes.

Q. Were you in Lynn, Mass. on November 27 or 28 of 1981?

A. No.

Q. Where were you on November 27, 1981?

A. November 27?

Q. Yes.

A. In Florida.

\* \* \* \* \* \*

Q. And you're positive that you were not in Massachusetts from the time you drove down there [on] November 1st or 2nd, of 1981 until the time you came back the day before Christmas of 1981?

A. Yes, I am."

Thus, in response to six separate questions, Goguen responded unequivocally that he was in Florida, not in Lynn, on November 27, 1981.

On August 23, 1982, the grand jury heard testimony from three witnesses who stated that they had seen Goguen in Lynn on Friday, November 27. Upon the completion of the testimony of those three witnesses, the foreman of the grand jury stated: "We have proven in our minds, I guess, that Mr. Goguen has lied to us."

On September 3, 1982, Goguen telephoned Special Agent Murray who made a written statement summarizing that conversation: "On September 3, 1982, the undersigned received a telephone call from Goguen while at the ATF Office, 60 Batterymarch St., Boston, MA. Goguen stated that he may have 'misunderstood' some of the grand jury questions about being in Lynn, MA. on or about 11/27/81. He then stated that he thought he had returned to Lynn from Florida on one occasion for his son's court appearance ... but could not remember when that occurred. He then added that, 'It was personal, I did not want to answer their questions,' and 'I don't want to be looking over my shoulder, I don't want anyone looking at me.' I asked Goguen if he had, in fact, returned to Lynn during November, 1981, and he replied, 'I'm not sure, maybe.' "

Goguen's memory of this conversation, reflected in an affidavit he filed with the district court, was as follows: "[I] told [Murray] that I might have made a mistake about some of the answers to questions in the grand jury. I told [Murray] that I had come back to Lynn to go to court with my

son, that I did not remember the exact date, but that I was back during November to go to court."

Goguen happened to meet Special Agent Murray in Salem, Massachusetts, on September 21, 1982. According to the government, Goguen told Murray on this occasion to stop investigating him because it was proving to be an embarrassment to him; and that no reference was made during the September 21 conversation to Goguen's July 8 grand jury testimony. Goguen, on the other hand, claims that he again told Murray on September 21 that he had made a mistake in his answers to some of the questions before the grand jury and that he wanted to straighten it all out.

On September 24, Agent Murray filed a complaint with a United States Magistrate, charging the crime for which Goguen eventually was convicted. Goguen was arrested on September 27. Bail was set at $25,000. On October 5, the grand jury returned a two-count indictment, charging Goguen with violations of 18 U.S.C. § 1623(a).[2] Goguen was arraigned on October 5, at which time he pleaded not guilty.

Prior to trial, Goguen filed three motions to dismiss the indictment. The first alleged that prosecution of Count I was barred by 18 U.S.C. § 1623(d), which prohibits prosecution if an accused has made an effective recantation of his false testimony.[3] The factual basis for this motion, the alleged recantation, was Goguen's telephone call to Agent Murray on September 3. The second motion to dismiss was based on allegations of abuse of the grand jury procedure, including allegations that the AUSA improperly exercised control over the scope and direction of the grand jury investigation

and that he improperly gave advice to Goguen during the grand jury proceedings. The third motion to dismiss related solely to Count II of the indictment, which is not at issue on appeal. A hearing on the motions to dismiss was held before United States District Judge A. David Mazzone on January 11, 1983. After the hearing, the court denied the motions to dismiss and set the trial date for January 13.

■ Before the jury was empaneled, a hearing was held on the issue of materiality.[4] The court held that the "questions that were asked Mr. Goguen constituted material matter in these grand jury proceedings." The jury then heard two days of evidence and argument, after which it deliberated and returned a verdict of guilty on Count I. On February 7, Goguen was sentenced to three years in prison.

On appeal, Goguen does not challenge the sufficiency of the evidence to support his conviction.

He does claim error in several respects, including (1) that he made an effective recantation to Agent Murray on September 3, 1982; (2) that the government abused the grand jury procedure; (3) that the false declarations were not material to the grand jury proceedings; (4) that the court committed reversible error in several of its evidentiary rulings; and (5) that Goguen was denied a fair trial because the government withheld evidence asserted to have been exculpatory. We shall discuss each of these claims of error seriatim.

## II.

### RECANTATION

Turning to Goguen's first motion to dismiss, he claims that the court erred in two

---

2. The second count, which also related to Goguen's July 8, 1982 grand jury testimony, charged that he had denied ever having used an alias, when in fact he had his phones listed under the name of Anthony Gaudette. The jury acquitted Goguen on this count.

3. Section 1623(d) provides in full:
"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such ad-

mission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

4. A false declaration must be "material" to the court or grand jury proceeding before it can be punishable under § 1623(a). Materiality is a question of law for the court. *United States v. Kehoe,* 562 F.2d 65, 68 (1st Cir.1977).

respects: first, that as a matter of law his statements to Agent Murray on September 3 and 21 constituted an effective and timely recantation; and second, that the court abused its discretion in denying his request for an evidentiary hearing on the recantation issue.

■ It is common ground that the issue whether an effective and timely recantation has been made is one of law to be decided by the court. *United States v. D'Auria,* 672 F.2d 1085, 1091 (2d Cir.1982), and cases there cited. Section 1623(d), which makes an effective recantation a bar to prosecution, requires that the declarant admit that his prior statement was "false". The legislative history of the section does not shed any light on how unambiguous the admission must be. We turn, therefore, to the relevant case law. The leading decision on this issue is *United States v. D'Auria, supra.*

In *D'Auria,* the defendant's attorney wrote a letter stating that the defendant wished to add to and clarify some of his grand jury testimony; that he had not completely understood some of the questions asked him; and that he wished to come forward with any additional information he could provide. The *D'Auria* court held that "[a]n outright retraction and repudiation of his false testimony is essential to a 'recanta-

tion' within the meaning of the statute", *id.* at 1092, and concluded that D'Auria's statements did not amount to an offer to admit that his earlier testimony was false. *Id.* at 1092 & n. 3.[5] The court grounded its interpretation of the statute on an evaluation of policy considerations, which included avoiding the demeaning specter of a lying witness engaged in a bargaining process with the government, the purpose of which would be to discover the exact scope of the information in the possession of the government and thereafter to tell only so much of the truth as he saw fit.

■ We agree with the concerns expressed by the *D'Auria* court and conclude that the standard announced in that case should govern here. Applying that standard, we believe that Goguen's statements to Agent Murray fall far short of the requisite specificity. According to Agent Murray's recollection of the September 3 phone conversation, in response to the direct question whether he returned to Lynn during November 1981, Goguen replied, "I'm not sure, maybe." That is hardly the outright repudiation of his earlier testimony that the statute requires. Moreover, even if we were to take Goguen's own affidavit as true,[6] it does not, as a whole, support his argument. While he claims to have stated

5. Section 1623(d) is not clear whether the accused must make his admission of falsity before the grand jury itself, or whether, as here, an informal conversation with a law enforcement agent is sufficient to bring the bar to prosecution into operation. Nor is the legislative history of any clear help. We do note, however, that the language of the section does say "*in* the same continuous ... grand jury proceeding *in* which a declaration was made...." (emphasis added). While not conclusive, this would appear to mean that an admission of falsity, to rise to a recantation, would have to be made directly to the same grand jury. *But compare United States v. Crandall,* 363 F.Supp. 648, 654 (W.D.Pa.1973) ("statement afforded to the government [and read to grand jury] was equivalent to having been made in the grand jury proceeding"), *aff'd,* 493 F.2d 1401 (3d Cir.), *cert. denied,* 419 U.S. 852 (1974). The court in *D'Auria* did not distinguish between a recantation made to the grand jury and an offer to recant made to the government, although it apparently assumed that the latter would be sufficient for the purposes of the statute, particularly in light of the

fact that the grand jury voted not to recall D'Auria to testify. We assume, for the purposes of argument, that the informality of Goguen's statements to Agent Murray—leaving aside for the moment the other requirements of § 1623(d)—does not warrant rejection of his claim in this respect.

6. This leads us to Goguen's second claim of error in the denial of his motion to dismiss, i.e. that it was error for the court to have denied him an evidentiary hearing on the issue of recantation. We hold that the court did not err. The court is given considerable discretion whether to hold an evidentiary hearing on a pre-trial motion. *United States v. Saade,* 652 F.2d 1126, 1136 (1st Cir.1981); *United States v. Fischel,* 686 F.2d 1082, 1095 (5th Cir.1982). The court here reasonably decided that Goguen's affidavit did not even allege facts sufficient to give rise to a legitimate dispute regarding a recantation. A hearing would only have reiterated the same distinctions between Murray's and Goguen's accounts of the two conversations. Moreover, the distinctions in the

explicitly that he was back in Lynn in November 1981, his only reference to his grand jury testimony was that he "might have made a mistake about some of the answers to questions in the grand jury." This type of statement is exactly what the *D'Auria* court held did not constitute an outright retraction and repudiation of prior false testimony. We hold that Goguen's September 3 conversation with Agent Murray was not a recantation within the meaning of § 1623(d).

As for the September 21 meeting between Goguen and Murray, the latter denied that Goguen discussed the grand jury testimony at all, whereas Goguen claims he told Murray he made a mistake in his answers to "some questions" in the grand jury proceeding and that he wished to "straighten it out." Again, taking Goguen's affidavit as true, we hold that he did not make a sufficiently specific and clear admission that his prior testimony was false. More was required than the amorphous assertion that he had made mistakes in some of his answers.

We hold that, for an effective recantation, the accused must come forward and explain unambiguously and specifically which of his answers in prior testimony were false and in what respects they were false. Goguen did not make an effective recantation.[7]

### III.

### ABUSE OF GRAND JURY PROCEDURE

Goguen claims that the court erred in denying his second motion to dismiss, which

alleged misconduct by the AUSA during the grand jury proceedings on July 8, 1982. The alleged misconduct consisted of the AUSA's indication to the grand jury, after they had heard Agent Murray's testimony, that they should not "tip off" Goguen that they had heard evidence of his whereabouts.[8] Goguen contends that this admonition created an atmosphere that encouraged perjury, contrary to the truth-seeking function of the grand jury. He goes so far as to argue that the grand jury was biased against him, which would have been a violation of his constitutional rights. *Costello v. United States,* 350 U.S. 359, 363 (1956).

The thrust of Goguen's claim is that, if he had been peppered with questions by members of the grand jury about where he had been on November 27, he might have recalled that he had gone to Lynn for a short time in late November. This proves too much. First, it implies that the government and the grand jury must inform a witness that they have information contrary to his testimony or that they suspect he is lying. No such obligation exists. *United States v. D'Auria, supra,* 672 F.2d at 1093; *United States v. Del Toro,* 513 F.2d 656, 664 (2d Cir.), *cert. denied,* 423 U.S. 826 (1975). Second, it ignores the fact that Goguen was asked about his whereabouts on November 27, not once, but *six* times. The question was phrased in six different ways. He was twice asked whether he was "sure" or "positive". We have little difficulty in saying that, even if

---

accounts of the September 3 conversation were minor at most; absent significant differences in the allegations, no evidentiary hearing was required. *United States v. Tucker,* 495 F.Supp. 607, 613 (E.D.N.Y.1980).

**7.** In view of our holding that Goguen did not make an effective recantation, there is no need for us to reach the issue as to the timeliness of the alleged recantation. That issue heretofore has not been addressed by this Court. Two other courts—the Fifth Circuit and the District of Columbia Circuit—have held that, despite the disjunctive grammatical structure of the statute—"if . . . the declaration has not substantially affected the proceeding, or it has not

become manifest that such falsity has been or will be exposed"—satisfaction of both requirements is essential in order to invoke the bar to prosecution. *United States v. Scrimgeour,* 636 F.2d 1019 (5th Cir.), *cert. denied,* 454 U.S. 878 (1981); *United States v. Moore,* 613 F.2d 1029 (D.C.Cir.1979), *cert. denied,* 446 U.S. 954 (1980).

**8.** In his argument before the court on his second motion to dismiss, Goguen also argued that the government improperly rendered legal advice to Goguen, while he was testifying, regarding his right not to answer certain questions. Goguen does not press this argument on appeal.

the members of the grand jury had questioned him along the same lines, his answers would not have changed. Our ruling, however, should not be construed as condoning the conduct that did occur here. The grand jury "must be free to pursue its investigations unhindered by external influence or supervision...." *United States v. Dionisio*, 410 U.S. 1, 17 (1973).

Since we are convinced that the AUSA's conduct in the grand jury room did not in fact curtail or restrict the grand jury investigation, and did not deprive Goguen of any constitutional rights, the second motion to dismiss was properly denied.

## IV.

## MATERIALITY

Goguen also claims that, since the grand jury was in possession of information tending to show that he was not in Florida, his later testimony that he was in Florida could not have impeded or hampered the investigation—for the simple reason that the grand jury in all likelihood did not believe him.

 We find no merit in this claim. The test for materiality is whether the testimony might have influenced the grand jury. *United States v. O'Connell*, 703 F.2d 645, 648 (1st Cir.1983). Moreover, we are satisfied that the grand jury was impeded or hampered by Goguen's false statements. Among the questions asked of Goguen on

July 8, was whether he had any knowledge of how the Lynn fire began. In the grand jurors' minds, his negative answer could have been a mere extension of his lies regarding his whereabouts, or it could have been a truthful answer. That they might have had a question in their minds as to that critical information, is sufficient indication that the investigation was impeded. Similarly, the testimony which the grand jury had heard prior to Goguen's testimony was that of Agent Murray, who could not provide any eyewitness account of Goguen's whereabouts on November 27. It would be speculative to say that the grand jury believed one and not the other. It was not until August 23, when they heard the testimony of three eyewitnesses, that the grand jury appeared to be satisfied that Goguen had lied on July 8. Finally, the fact that the grand jury had to call those three witnesses at all is further indication that the grand jury was impeded in its investigation.

 We hold that the court correctly ruled that Goguen's false statements were material within the meaning of § 1623(a).[9]

## V.

## EVIDENTIARY RULINGS

This brings us to Goguen's claim that the court committed reversible error in certain of its evidentiary rulings. Of these, the two that we believe warrant the chief dis-

---

**9.** Goguen also claims that the court improperly curtailed his cross-examination of the grand jury foreman during the materiality hearing. Goguen's counsel was attempting to elicit testimony tending to show that perhaps the Lynn fire had not been deliberately set, in which case, he argued, the whereabouts of Goguen on November 27 would be entirely immaterial. He claims on appeal that underlying his inquiry of exactly how the fire started was the basic issue of why Goguen was called to testify at all before the grand jury.

It is axiomatic that wide discretion is accorded to the trial court to control the scope of cross-examination. Fed.R.Evid. 611(a)–(b); *United States v. Honneus*, 508 F.2d 566, 572 (1st Cir. 1974), *cert. denied,* 421 U.S. 948 (1975); *Villanueva v. Leininger,* 707 F.2d 1007, 1010 (8th Cir.1983). Goguen was called before the grand jury to testify to his knowledge, if any, of the

origin of the Lynn fire. The fact that he was in the immediate area of the fire only hours before it began makes it more likely that he would have such knowledge than if he was 1000 miles away. Therefore, a truthful answer to the inquiry as to his whereabouts was material to the grand jury investigation. The government, to show materiality, does not have to establish that arson actually occurred or that Goguen was a target of the arson investigation. *United States v. Beitling,* 545 F.2d 1106 (8th Cir.1976), *cert. denied,* 430 U.S. 918 (1977); *United States v. Anfield,* 539 F.2d 674 (9th Cir.1976). Materiality is measured as of the time of the investigation. *United States v. Lococo,* 450 F.2d 1196, 1199 n. 3 (9th Cir.1971), *cert. denied,* 405 U.S. 945 (1972). We hold that the court did not abuse its discretion in curtailing Goguen's cross-examination.

cussion are the exclusion of any reference to or evidence regarding Goguen's two conversations with Agent Murray in September, and the admission in evidence of testimony regarding the magnitude of the Lynn fire. The other evidentiary rulings of which Goguen complains are the court's refusal, on the third day of the trial, to permit the introduction of expert testimony as to Goguen's ability to remember, and its refusal to permit inquiry regarding the substance of the AUSA's statements to the grand jury immediately before Goguen's appearance before that body.

(A)

Goguen argues that, as part of his attempt to negate the existence of the necessary element of knowledge for a § 1623 conviction, he should have been permitted to put before the jury evidence of his two conversations with Agent Murray in September. Goguen's argument is that his attempts to "straighten it all out" constituted relevant evidence that he did not knowingly make false statements before the grand jury on July 8. The gravamen of his argument is that his statements in September about mistakes he might have made in July can be interpreted to mean that, during his grand jury testimony, he had forgotten about his November 1981 trip to Massachusetts. While this may be said to be a close question, we disagree with Goguen. We uphold the court's ruling.

Goguen has cited several cases for the general proposition that evidence of recantation or retraction is relevant to show an absence of intent to commit perjury. *United States v. Norris*, 300 U.S. 564, 576 (1937); *United States v. Kahn*, 472 F.2d 272, 284 (2d Cir.), *cert. denied*, 411 U.S. 982 (1973); *United States v. Lococo*, 450 F.2d 1196, 1198 n. 2 (9th Cir.1971), *cert. denied*, 406 U.S. 945 (1972); *Beckanstin v. United States*, 232 F.2d 1, 4 (5th Cir.1956). Goguen acknowledges that *Kahn* and *Lococo* are perjury cases under § 1621, which require the element of willfulness, as distinguished from knowledge. He maintains, however, that the two statutes are so interrelated that they should be treated the same.

Aside from the fact that we have held above that Goguen did not make an effective recantation, we further hold that the two elements of willfulness and knowledge are quite different—enough so to warrant a difference in treatment of alleged recantation evidence. Section 1621 requires specific intent to deceive and to violate one's oath. *Beckanstin, supra*, 232 F.2d at 4. Section 1623 requires only that the false statement be made voluntarily and knowingly as opposed to mistakenly or inadvertently. We recognize that the cases cited by Goguen stand for the proposition that evidence that the defendant later attempts to retract his earlier statement is relevant to the issue of whether he willfully *intended* to deceive in the first place. On the other hand, an attempt to retract at some future time bears less directly on whether he *knew* his statements were false when he made them—to the point where, in this case it was reasonable to exclude the evidence as tangential. Fed.R.Evid. 403.

We believe that our conclusion in this respect is born out by two facts in Goguen's case. First, the transcript of Goguen's grand jury testimony does not show any confusion or lack of memory on his part. His answers were clear and specific. Moreover, essentially the same answer was given by him six times. This hardly supports Goguen's claim that he made his false declarations by mistake. Second, his attempted retraction occurred some two months after he gave the false testimony. We have difficulty, as did the district court, in understanding how his state of mind in September bore on his state of mind in July. We express no opinion as to how we would hold if Goguen had contacted Murray, or anyone else in the government, immediately after his false testimony. Under the circumstances of this case, the two-month time lapse was a sufficient reason for the court to exclude all evidence of Goguen's attempted retraction.

We hold that the court did not err in excluding Goguen's conversations with Agent Murray in September.

## (B)

The second claimed erroneous evidentiary ruling was the admission of testimony regarding the magnitude of the Lynn fire.[10] During the trial, Goguen's counsel objected to evidence of the fire as unnecessary, irrelevant and prejudicial. He argued that it should be excluded pursuant to Fed.R.Evid. 403. The government offered the evidence to show that, because of the sheer size of the fire, it was more likely than not that Goguen in fact did remember, at the time of his grand jury appearance, that he was in Lynn, and in the very vicinity of the fire.

■ We agree with the district court that evidence of the size of the fire was probative on the issue of whether Goguen would have remembered he was in Lynn when he stated to the grand jury that he was not. The fire which was the subject of his testimony was not in some distant place having nothing to do with Goguen; it was in his home town. More important, he had been in that very place the day before the fire began. There was evidence that the fact of the fire was brought to his attention by his Florida neighbor, and that it caused him sufficient concern that he telephoned a friend in Lynn. We are satisfied that evidence of the fire was relevant to the issue of Goguen's knowledge when he testified before the grand jury.[11]

That, however, does not end our inquiry under Rule 403. We next must consider whether the risk of unfair prejudice to Goguen outweighed the relevance of the fire-related evidence. After carefully reviewing the record as a whole, we conclude that the district court properly admitted the evidence with respect to the fire.

First, there is nothing in the record to indicate that the fire was set deliberately and therefore no evidence of any criminal conduct so far as setting the fire is concerned. That alone substantially undermines Goguen's argument, for there is no basis for believing that the jury thought Goguen was involved with the fire. Second, both the government and the trial judge went to substantial lengths to eliminate from the jurors' minds any suspicion of a connection between Goguen and the fire. In summation, the government stated that it was not trying to "place Mr. Goguen in the middle of Exhibit 1 (a street map of Lynn, with special markings for the fire area)." The judge, in his instructions to the jury, said explicitly, "Mr. Goguen is not charged in this case with any participation whatsoever in anything that happened in Lynn at that time. That doesn't concern you in the slightest. That was the background to the case. But that is not here before the jury."

We hold that the jury was not mislead or confused in any way by introduction of the relevant evidence of the Lynn fire and that Goguen therefore was not unfairly prejudiced.

## (C)

Goguen further claims that the court erred in excluding expert testimony that would have shown that Goguen had a poor capacity to remember things, in addition to an overall low intelligence level. During the course of the voir dire of the expert witness, the latter testified that the phrasing of certain questions asked of Goguen would make them difficult to answer because of his poor memory. After the voir dire, the court denied Goguen's motion to permit introduction of the expert testimo-

10. Because of the very nature of the phenomenon of fire, it would be less than human to minimize describing it—especially one of the magnitude of the Lynn fire. *See, e.g., United States v. Bubar, supra,* 567 F.2d at 196 ("massive arson which destroyed the plant of the Sponge Rubber Products Company").

11. Goguen argues that people do not usually remember where they were the day before a significant or momentous event. Assuming ar-

guendo that that is true, in this case Goguen was at the very site of a significant event the day before it occurred. That makes the fire evidence relevant as to memory. As the United States Attorney pointed out during oral argument, while the average person may not remember where he was the day before President Kennedy was assassinated, he surely would remember if he was at the Texas Book Depository in Dallas the day before the assassination.

ny. Its reasons for excluding such evidence were the late stage of the trial when it was offered, the absence of proper notice, the doubt the court had that the proffered evidence in fact would help the jury, and the risk the court saw that it would confuse the jury.

The court, under Fed.R.Crim.P. 12.2(b) and (d), may exclude evidence of a defendant's mental state if the defendant failed to give the requisite notice. The notice in this case was given to the government the night before the third and final day of trial, after the government's case was completed and when the defense itself was about to rest. In view of the wide discretion granted to the trial court on this matter, the lack of timeliness alone was sufficient reason for excluding the testimony. *United States v. Veatch,* 674 F.2d 1217 (9th Cir.1981). We decline to hold that the court abused its discretion in ruling that the testimony might confuse or unduly influence the jury. Furthermore, the jury had heard other evidence tending to show Goguen's poor capacity to remember and we assume that the jury gave that evidence appropriate consideration.

We hold, under these circumstances, that the court did not err in excluding expert testimony regarding Goguen's poor memory.

### (D)

Finally, Goguen claims that the court improperly curtailed his counsel's questioning the grand jury foreman at trial about any statements made by the AUSA to the grand jury immediately before Goguen's appearance. Goguen asserts that this evidence would have shown that the grand jury atmosphere was not conducive to having his memory jogged and that therefore he did not make his false declarations with knowledge.

We dispose of this argument quickly by referring to what we have said above under section III of this opinion regarding the alleged abuse of the grand jury procedure, and see note 9 *supra.* Neither the grand jury nor the government had any obligation to tell Goguen that they suspected him of lying in order to refresh his memory. A grand jury witness is under an obligation in the first instance to tell the truth.[12]

In conclusion, after careful examination of the entire record, we find no merit in any of Goguen's claims of error. He was convicted of a serious crime after a fair trial.

*Affirmed.*

---

12. Goguen also claims that the government improperly withheld until the middle of the trial exculpatory evidence that Goguen was in Florida on the evening of Saturday, November 28. Such evidence was not exculpatory. The government did not charge that Goguen was in Lynn on November 28. He was accused of lying about his whereabouts on November 27. The fact that he told the truth about his whereabouts on November 28 is not helpful to him. Moreover, Goguen never challenged at trial the evidence that he in fact was in Lynn on November 27. Had he done this, the withheld evidence might be said to have had some relevance. Having failed to demonstrate the exculpatory value of the evidence, we hold that Goguen was not prejudiced by its being withheld. *United States v. Arruda,* 715 F.2d 671, 685 (1st Cir.1983).